GIANT FOOD, INC., ET AL. *v.* WASHINGTON-ROCKVILLE INDUSTRIAL PARK, INC. ET AL.

[No. 265, September Term, 1968.]

*Decided June 4, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*James C. Christopher* and *Robert C. Heeney,* with whom were *Heeney, McAuliffe & McAuliffe* on the brief, for appellants.

*Charles Norman Shaffer,* with whom were *Shaffer, Mc-Keever & Fitzpatrick; David Betts* and *Betts, Clogg & Murdock; Joseph B. Simpson* and *Simpson & Simpson; David MacDonald; John W. Neumann* and *Kardy, Brannan & Neumann, Howard J. Thomas* and *Bradshaw, Thomas & Yeatman; Clarence C. Keiser; Francis J. Pelland* and *Marvin F. Sadur,* on the brief for appellees Washington-Rockville Industrial Park, Inc. and Chevy Chase Motor Company, Inc., et al. and *Karl G. Feisner,* with whom were *E. Gwynn Miller* and *Feisner, Kaplan, Miller & Smith* on the brief, for Parklawn, other appellee.

SMITH, J., delivered the opinion of the Court.

This case may be cited as an illustration of one of the problems that arises when our land is converted from its natural state into urban uses.

Appellee Parklawn, Inc. (Parklawn), developer of a large commercial cemetery in Montgomery County near Rockville, sued Appellee Washington-Rockville Industrial Park, Inc. (Industrial Park) and forty other defendants. This action was Law No. 15991 in the Circuit Court for Montgomery County. In the first count Parklawn claimed that Industrial Park, as "the owner, seller and developer of property adjacent to that of the plaintiff" "has since 1962 continuously graded, paved and otherwise removed natural ground cover from the property it was developing * * * in such a manner as to copiously increase the

run-off of water, dirt, silt and debris onto the land of plaintiff", that "defendants [1] were negligent in failing to take, and failing to have their agents, engineers, contractors and builders take reasonable precautions against the forseeable consequences of their acts, and of maintaining a nuisance which is continuing to cause plaintiff damage and loss of valuable cemetery land", and that Industrial Park, although advised of the consequences of its acts, had "failed and refused to take any proper remedy or to otherwise accept responsibility for its acts", the nuisance created "continuing unabated". Parklawn asked for damages of $5,500,000.00 together with interest and costs, and as ancillary relief, an injunction requiring this defendant to change the dispersal and flow of the water from its Industrial Park so as to prevent the wrongful concentration and continued discharge of dirt, debris, and silt on plaintiff's land, together with an injunction restraining this defendant from further denuding the land without proper precautions.

In the second count Parklawn sued the other forty defendants contending that they were "the owners, lessors, and improvers of property near the property of plaintiff" and that "since 1962" defendants had "built upon and otherwise developed their property for their economic benefit from its natural state and into an industrial and commercial complex and use, in such a manner as to copiously increase the run-off of water, dirt, silt and debris onto the land of plaintiff", that "defendants were negligent in failing to take, and in failing to have their agents, engineers, contractors and builders take reasonable precautions against the foreseeable consequences of their acts and have maintained a nuisance which is continuing to cause plaintiff damage and loss of valuable cemetery land", that "defendants have been advised of the consequences of their acts, but have failed and refused to take any proper remedy or to otherwise accept responsibility for their acts", the damage created continu-

---

1. Industrial Park was the only defendant named in this count.

ing unabated. Parklawn also asked for damages in the amount of $5,500,000.00 in that count together with similar ancillary relief by way of injunction.

The above mentioned suit was filed on September 22, 1964. On June 7, 1965, Parklawn filed a suit against Filderman Corporation and appellant Giant Food, Inc. (Giant Food). Count one was a suit against Filderman Corporation with basically the same contentions as appeared in count one of the prior suit except for its language that "[t]his defendant, as well as the defendants in Law No. 15991, filed in the Circuit Court for Montgomery County, Maryland", were "negligent individually severally and/or jointly", etc., with an identical prayer for damages and ancillary relief. In the second count, Giant Food was the defendant, there being an allegation that it was the developer of property adjacent to that of Parklawn and that it "as well as the defendant in Law No. 15991, was negligent individually severally and/or jointly in failing to take and failing to have its agents" etc. "take reasonable precautions", as alleged in count two of the prior suit, with a prayer for damages and ancillary relief by way of an injunction identical with that in count two of the first suit.

On September 9, 1965, Parklawn dismissed with prejudice its action against twenty-four defendants. An order of dismissal as to appellee Chevy Chase Motor Company, Inc., was filed on December 20, 1966. Summary judgment was entered in favor of two defendants and this action was affirmed on appeal by this Court. See *Parklawn v. Nee,* 243 Md. 249, 220 A. 2d 563 (1966). Summary judgment was entered in favor of five more defendants on April 12, 1967. The two actions were consolidated on April 12, 1967.

On August 31, 1967, Giant Food filed its third party claim against the parties (including Industrial Park) as to which Parklawn had dismissed and two other parties. Appellant Danac Real Estate Investment Corporation (Danac) filed its third party claim against the same parties on September 6, 1967.

104

Ultimately amended third party claims were filed by Giant Food and Danac against these same parties. The third party claim of Danac recited the filing of the actions by Parklawn against each of the third party plaintiffs, denied the allegations that Parklawn made against the third party plaintiffs in its declaration and stated that if Parklawn is found entitled to recover against Danac on the basis of the allegations contained in the declaration and if the allegations were supported by competent evidence any liability which might be imposed as to the third party plaintiff would "have been caused in part by similar actions, negligence, carelessness and breach of duty by the * * * Third Party Defendants, who would therefore, be entitled to contribute to any damages arising out of such liability, in that [the] Third Party Defendants own property draining into the property owned by Parklawn, Inc., and * * * the said Third Party Defendants, have graded, paved, changed or otherwise removed natural ground cover from their respective property contiguous to and in the area of the property owned by Parklawn, Inc., so as to copiously increase the run-off of water" etc., claiming that third party defendants had "thus directly contributed to any damage which may have been done * * * as alleged in the original Declaration" and praying judgment against the third party defendants for the contributable portion of any sums which Parklawn might be found entitled to recover in this action.

Giant Food's third party claim was similar in content and alleged that the third party defendants had *"jointly* graded, paved, changed and otherwise removed natural ground cover from their respective properties", etc. "so as to increase copiously the run-off of water" etc. (emphasis added)

In sustaining demurrers to the amended third party claims the circuit court judge said in pertinent part:

"The amended third-party claims share a similar fault in wording, this time alleging that the *joint* acts of the third-party defendants caused

all of plaintiff's damage. This, again, falls short of the necessary allegation that there exists a concert of action between Giant, Danac and the third-party defendants *together* which would make them all joint tortfeasors, and for this reason it is obvious that the demurrers should be sustained again.

"The principal issue which must be decided is whether the demurrers should be sustained with or without leave to amend. The Court will sustain the demurrers without leave to amend, as it is now clear that no facts exist which could ever prove a concert of action or joint tortfeasor relationship. The Court's belief is based upon the proffer of counsel for Giant, in which counsel for Danac concurs, at the hearing held May 24, 1968.

"It was proffered that the Washington Suburban Sanitary Commission approved and issued a 'master plan' calling for a large, common drainage culvert adjoining the properties owned by Giant, Danac and the various third-party defendants, and that this culvert empties into a stream near the Parklawn Cemetery. The individual landowners herein involved were required to change the natural contour of their land so as to promote drainage from their property into this culvert. As a result thereof, the natural flow of water was artificially increased, the stream near Parklawn caused to overflow and water, dirt, debris, etc. caused to run upon the land of the plaintiff. It was admitted that neither Giant nor Danac, nor any of the defendants, established this plan; neither did they all change the natural contour of their land at the same time, since each acquired their properties at separate and distinct times prior to 1962.

"The Court feels that this set of facts, which may be assumed true for the purposes of the demurrers, fails to imply joint liability or a con-

cert of action, absent a specific allegation that all of these landowners intended to cause harm to the plaintiff — which is not present in the case. * * *

   * * *

"Viewing the proffer of counsel in the light most favorable to Giant and Danac's third party claim, if permitted to amend, they would at best allege that there would have been no injury to Parklawn but for the combined contribution of all third party defendants with them: that is, the runoff from the land of Giant and Danac was not sufficient to cause the stream to overflow, but combined with others, the flow became so great as to cause plaintiff's injury. This still falls far short of alleging a concert of action or a joint tortfeasor relationship. In this set of facts, Parklawn itself could still only recover proportional damages from each defendant contributing to the total harm. It follows that the potential third party defendants cannot be liable to Giant and Danac, and they cannot, therefore, be made third-party defendants.

"Accordingly, the Court feels that to allow amendment would only result in additional, extensive pleadings, the clouding of the issues before a jury, and great expense and inconvenience to the Court and the parties. Counsel for Giant admits that Giant, Danac and the third-party defendants did not together adopt or agree upon the common culvert; the third-party defendants are separated by time, if not by miles; the various properties from which the water flowed are subject to *different* ownership and control; and no suggestion has been made to the Court that all parties combined even to the extent of *intending* a common harm to the plaintiff. Since this is a case involving third party practice, not the original claim of the plaintiff, the Court

feels the inclusion of the third party defendants is not justified by any theory of law or fact."

Accordingly, the demurrers were sustained without leave to amend. Two questions are submitted to us, (1) whether the trial court was in error in holding that a lack of concert of action *ab initio* the tort precluded the joining as third party defendants of all those alleged to have caused the damage of Parklawn and (2) whether the trial court by its ruling barred substantive rights of the appellant. We shall reverse the action of the trial court relative to the demurrer to the third party claims, thereby making unnecessary consideration of the second point.

Maryland Rule 315 a provides in pertinent part:

"Where the defendant in an action *claims that a person not a party* to the action *is or may be liable to him for all or part of the plaintiff's claim against him,* he may at any time after commencement of the action cause to be served a summons and third-party claim * * * upon such third party." (emphasis added)

Rule 14 (a) of the Federal Rules of Civil Procedure also provides in pertinent part:

"At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to him for all or part of the plaintiff's claim against him.*" (emphasis added)

This Court has pointed out several times that the Maryland rule is modeled largely upon Rule 14 of the Federal Rules of Civil Procedure. *White v. Land Homes Corporation,* 251 Md. 603, 606, 248 A. 2d 159 (1968); *Allen & Whalen v. Grimberg Co.,* 229 Md. 585, 586, 185 A. 2d 337 (1962); *Gorn v. Kolker,* 213 Md. 551, 554, 133 A. 2d 65 (1957). This is borne out by a comparison of the two rules, noting their similarity in terminology.

108

When one carefully analyzes the pertinent pleadings in this case, it is apparent that Parklawn, the original plaintiff, has alleged negligence on the part of the defendants and that the defendants are jointly liable. It likewise is apparent that Giant Food and Danac have each alleged that the third party defendants are or will be liable to them because of this joint liability, liability in each instance based upon allegations of negligence. See 39 Am. Jur. *Nuisances*, § 4; *Sherwood Brothers, Inc. v. Eckard*, 204 Md. 485, 493, 105 A. 2d 207 (1954); *State v. Feldstein*, 207 Md. 20, 34, 113 A. 2d 100 (1955) and *Benson v. Loehler, Executrix*, 228 Md. 55, 60-61, 178 A. 2d 909 (1962) relative to the distinction between nuisances and negligence.

In *White v. Land Homes Corporation, supra,* Judge Singley stated for this Court:

"We think that this means that a third-party claim will lie in any case where it can be alleged that the third-party defendant is necessarily answerable to the original defendant should judgment be entered against him. This is the rule of the federal decisions." *Id.* at 609.

And at page 611, it was further stated:

"The federal courts have been quite liberal in holding a third-party claim sufficient if it alleges facts under which the third-party defendant 'is or may be liable to' the original defendant 'for all or part of the plaintiff's claim in order to avoid circuity of action.' (citations omitted) In *Friedman [Friedman v. Wilson Freight Forwarding Co.,* 181 F. Supp. 327 (D.W.D. Pa. 1960)], for example, the third-party claim simply recited that if the original defendant were found liable to plaintiff, 'then and in that event [the third-party and fourth-party defendants] are liable over to this defendant.' This was held to be substantial compliance

with Rule 14, since it stated a claim on which relief could be granted.

"We are inclined to follow the rule of the federal cases, and to regard as sufficient any third-party claim which sets out facts under which, if proved, the third-party defendant is, or may be liable for all or part of the plaintiff's claim."

Accordingly, on the allegations of the pleadings as considered by the lower court judge, regardless of what the evidence may eventually show relative to those allegations, he was in error in sustaining the demurrer. Parklawn, in its declarations consolidated for trial, and the third-party plaintiffs, in their amended third-party claims, appear to have alleged at least as much as was alleged in *Friedman,* commented upon in *White v. Land Homes Corporation, supra.*

> *Order of court sustaining demurrer to third-party claims reversed; case remanded for entry of order overruling demurrer and for trial on the merits; costs to abide the result.*