562 A.2d 1246

**MONTGOMERY COUNTY, Maryland**

v.

**VALK MANUFACTURING COMPANY.**

**No. 45, Sept. Term, 1988.**

Court of Appeals of Maryland.

Sept. 6, 1989.

Charles R. Spigelman, Asst. County Atty. (Clyde H. Sorrell, County Atty., Joann Robertson, Sr. Asst. County Atty., Clyde H. Henning, Asst. County Atty., Rockville), on brief, for petitioner.

Hugh E. Donovan (Michael P. Broderick, Silver Spring), on brief, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

When Dr. Srinivasa Rangaswamy entered Great Falls Road in his Toyota, he was immediately and fatally struck by an oncoming dump truck. In addition to chest injuries from the collision, his head was punctured by a snow plow arm which extended outward from the front of the truck. His family sued both the manufacturer of the snow plow and the truck owner who had used the plow without its blade. Because the court found that Rangaswamy was contributorily negligent in causing the accident, his family could not recover on its negligence claim against the truck owner who had used the plow. Contributory negligence is not a defense to strict liability, and a jury found the manufacturer strictly liable for its snow plow design. The issue here is whether the manufacturer may recover from the plow's user some of the money it paid to the plaintiffs—even though the plaintiffs could not have held the plow's

user liable. We hold that the Uniform Contribution Among Tortfeasors Act ("UCATA") does not establish a right of contribution under these circumstances. *See* Maryland Code (1957, 1986 Repl.Vol.) Article 50, §§ 16 to 24.

## I.

Montgomery County ("the County") purchased a snow plow made by the Valk Manufacturing Company ("Valk") and had it installed on one of its trucks. On a snowless day in December of 1982, the County drove the truck with the plow device—but without the plow blade. Absent the blade, a steel plow arm extended at least twenty-nine inches from the bumper and radiator of the truck. At trial, one witness described it as a "battering ram." According to that witness, the County could have lowered the plow arm in about two minutes through the removal of some cotter pins.

While travelling along Great Falls Road in Montgomery County, the truck collided with the car driven by Dr. Rangaswamy ("Rangaswamy"). Rangaswamy had pulled out onto Great Falls Road from West Kersey Lane and directly in front of the oncoming truck.[1] As a result of the collision, the steel arm of the snow plow penetrated the driver's window of the car. Rangaswamy suffered puncture wounds in the left side of his skull in addition to chest injuries. He died shortly thereafter.

The decedent's widow and son brought a wrongful death action in negligence against the County and in strict liability against Valk.[2] Valk filed a negligence cross-claim against the County for contribution. After hearing the plaintiffs' and Valk's case, the judge found that Rangaswamy had

---

1. A C & P Telephone Company truck was parked along the intersection of Great Falls and West Kersey Lane in order to perform repair work. The truck's location may have impaired the vision of drivers, such as Rangaswamy, trying to enter Great Falls Road. The decedent's widow and son filed a negligence claim against C & P, with whom they settled before trial.

2. The plaintiffs' attorney agreed to withdraw a negligent design claim against Valk, and the judge directed a verdict for Valk on this claim.

been contributorily negligent in pulling his car into the intersection. Upon motions for directed verdict, he dismissed the plaintiffs' claim against the County and Valk's cross-claim against that entity.

■ While contributory negligence bars direct negligence claims, the defense does not bar strict liability claims. *See Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 597, 495 A.2d 348, 356 (1985); *Anthony Pools v. Sheehan,* 295 Md. 285, 299, 455 A.2d 434, 441 (1983), *aff'g,* 50 Md.App. 614, 620–26, 440 A.2d 1085, 1089–92 (1982); *see generally Restatement (Second) of Torts* § 402A comment n (1965). The plaintiffs therefore pursued the remaining strict liability claim against Valk alleging that Valk should have manufactured a snow plow with a quick disconnect device which would facilitate the removal of the snow plow arm.[3]

The jury found that Valk was liable for creating a defective and unreasonably dangerous snow plow design and awarded $2,500,000.00 in damages. Upon the denial of its post-trial motions, Valk appealed.

Among other things, the Court of Special Appeals held that Valk's cross-claim against the County for contribution had been incorrectly dismissed. *Valk Manufacturing v. Rangaswamy,* 74 Md.App. 304, 329–30, 537 A.2d 622, 634–35 (1988). Noted the Court of Special Appeals, "[t]he facts only established that the contributory negligence of Dr. Rangaswamy precluded his representatives from doing anything about that fault. It would not, however, preclude others from seeking proper redress." *Id.* at 330, 537 A.2d

---

**3.** Plaintiffs' expert Mr. Blackman testified that the quick disconnect device would be helpful when the "29–inch nose piece and hydraulic lift piece below were removed." He stated that:

[i]f you do not have any quick action coupling on there with a check valve in connection with it, when you take it off it is going to drain all the oil out. So, you have to put a coupling on there that you can disconnect quickly and then you do not lose your oil and there is no big problem. Otherwise you would have to refill the whole hydraulic system everytime that you did not do that.

at 635. We granted certiorari to consider whether a right of contribution exists in this case.

## II.

As early as 1799, the English common law barred contribution among joint tortfeasors. In *Merryweather v. Nixan*, 8 Term.Rep. 186, 101 Eng.Rep. 1337 (1799), two parties acted intentionally and in concert against the plaintiff. The plaintiff sued one of the parties and obtained full judgment. That party was barred from seeking damages from the non-paying party on the rationale that a wrongdoer should not be able to recover anything as the result of his or her wrongful act. *Prosser and Keeton on Torts* § 50, 336–37 (W. Page Keeton 5th ed. 1984). The case did not consider contribution in the context of mere negligence, as opposed to intentional wrongdoing. "It was not until 1894 that the question was even raised in England in a case of concurrent negligence, and the better English view, even before their statute, appears clearly to have been that contribution is not denied in cases of mere vicarious liability, negligence, accident, mistake, or other *unintentional* breaches of the law." *Id.* at 337 (emphasis added).

As in *Merryweather*, early American courts barred contribution in cases of wilful misconduct. Those courts, however, subsequently extended that bar to negligent conduct as well. *Prosser and Keeton* at 337. This historical turn of events has been much criticized: "There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or the plaintiff's collusion with the other wrongdoer, while the latter goes scot free." *Id.* at 337–38.

It is this unfairness which the UCATA sought to remedy. 12 U.L.A. 59, Commissioners' Prefatory Note to 1955 Version (1975) ("This act would distribute the burden of responsibility equitably among those who are jointly liable and

thus avoid the injustice often resulting under the common law."). The act "establishes the right of a person liable for damages for an unintentional wrong to compel others, who are liable with him for the same damages, to share in discharging the common liability." *Id.* at 59. Created in 1939, the uniform law was later revised in 1955. At least nineteen states have adopted the law, either in its original or revised form. 12 U.L.A. 71 (Supp.1989).[4]

### III.

In 1941, Maryland enacted a modified version of the UCATA. 1941 Maryland Laws Chapter 344. As this Court stated shortly after its passage: "The primary purpose of the [UCATA] was to create a right of contribution among joint tortfeasors which did not exist at common law ... and to establish a procedure whereby that right might be made effective in practice." *Baltimore Transit Co. v. State ex rel. Schriefer*, 183 Md. 674, 679, 39 A.2d 858, 860 (1944). Maryland had originally barred contribution among all joint tortfeasors. *E.g. Baltimore & Ohio R.R. Co. v. Howard County*, 113 Md. 404, 77 A. 930 (1910).

Although the uniform law was later revised, Maryland retained, for the most part, the version it originally adopted. Maryland's only substantive revision of the Act has been alteration and then abrogation of the third party practice

---

**4.** Alaska Stat. §§ 09.16.010 to 09.16.060 (1983); Ariz.Rev.Stat.Ann. §§ 12–2501 to 12–2509 (1988 Supp.); Ark.Stat.Ann. §§ 16–61–201 to 16–61–212 (1987); Colo.Rev.Stat. §§ 13–50.5–101 to 13–50.5–106 (1987); Del.Code Ann. tit. 10, §§ 6301 to 6308 (1974); Fla.Stat.Ann. § 768.31 (West 1986); Haw.Rev.Stat. §§ 663–11 to 663–17 (1985); Md.Code (1957, 1986 Repl.Vol.), Art. 50, §§ 16 to 24; Mass.Gen.Laws Ann. ch. 231B, §§ 1 to 4 (1986); Nev.Rev.Stat.Ann. §§ 17.225 to 17.305 (1986); N.M.Stat.Ann. §§ 41–3–1 to 41–3–8 (1986); N.C.Gen. Stat. §§ 1B–1 to 1B–6 (1983); N.D.Cent.Code §§ 32–38–01 to 32–38–04 (1976); Ohio Rev.Code Ann. §§ 2307.31 to 2307.33 (1981, 1986 Supp.); 42 Pa.Cons.Stat.Ann. §§ 8321 to 8327 (Purdon 1982); R.I.Gen.Laws §§ 10–6–1 to 10–6–11 (1985); S.C.Code Ann. §§ 15–38–10 to 15–38–70 (1988 Supp.); S.D. Codified Laws Ann. §§ 15–8–11 to 15–8–22 (1984, 1989 Supp.); Tenn.Code Ann. §§ 29–11–101 to 29–11–106 (1980).

provision originally contained in the UCATA. *See* 1957 Md.Laws Ch. 399 (repealing third party practice provision); 1947 Md.Laws Ch. 717 (modifying third party practice provision). Now third party practice in contribution cases is regulated by Maryland Rule 2–332, formerly Md.Rule 315.[5] The goals of the procedural device, however, remain the same. "The purpose of the third party practice provided for by the [UCATA] and by the Rules which have superseded it [is] to try in one action all phases of litigation among the original and impleaded parties...." *Stem v. Nello L. Teer Co.*, 213 Md. 132, 144, 130 A.2d 769, 775 (1957).

## IV.

According to the UCATA, "[t]he right of contribution exists among joint tortfeasors." Maryland Code (1957, 1986 Repl.Vol.) Article 50, § 17(a). This right is inchoate, however, until one joint tortfeasor "has by payment discharged the *common liability* or has paid more than his pro rata share thereof." Art. 50, § 17(b) (emphasis added). In order for Valk to seek contribution from Montgomery County under the UCATA, *both* must be "joint tortfeasors." According to the UCATA, joint tortfeasors "means two or more persons jointly or severally *liable in tort* for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Art. 50, § 16(a) (emphasis added).

We now consider the meaning of the terms "liable in tort" and "common liability" as they are used in the UCATA. If they denote mere culpability to the plaintiff for a wrong, then the County might be considered a joint tort-

---

**5.** That rule was modeled on and substantially resembles Fed.R.Civ.P. 14. *Giant Food, Inc. v. Washington–Rockville Indus. Park, Inc.*, 254 Md. 100, 107, 253 A.2d 867, 871 (1969). The effect of the provision's alteration "was not to obliterate existing substantive rights, but to [a]ffect only the procedure and remedies for the enforcement of those rights...." *O'Keefe v. Baltimore Transit Co.*, 201 Md. 345, 351, 94 A.2d 26, 28 (1953).

feasor and subject to contribution.[6] If the terms denote legal responsibility to the plaintiff for a wrong, the County is not a joint tortfeasor and is therefore not subject to contribution. The County was held not liable to plaintiffs as a result of Rangaswamy's own contributory negligence.

### A.

We have previously construed the language at issue in the context of interspousal immunity and worker's compensation immunity. In *Ennis v. Donovan*, 222 Md. 536, 161 A.2d 698 (1960), the plaintiff sued Ennis for negligent driving. Ennis, in turn, sued the plaintiff's spouse who had been driving at the time of the collision. We held that because the plaintiff was barred by interspousal immunity from suing Mr. Donovan directly,[7] the defendant could not sue him indirectly for contribution. We reasoned that the UCATA " 'is only applicable to a situation where there is a common liability to an injured person in tort. * * * [T]here can be no contribution where the injured person has no right of action against the third party defendant.' " *Id.* at 540, 161 A.2d at 700 (quoting *Baltimore Transit Co. v. State ex rel. Schriefer*, 183 Md. 674, 679, 39 A.2d 858, 860 (1944)). "[T]he right, if any, of . . . the defendant to contribution from . . . the third party defendant is a derivative right and not a new cause of action." *Id.* 222 Md. at 539, 161 A.2d at 700; *see Krick v. Carter*, 477 F.Supp. 152, 153 (M.D.Pa.1979) (stating that Maryland bars contribution in the context of interspousal immunity).

In the *Schriefer* case which we quoted, we had barred contribution where the third party defendant was an employer who had achieved immunity through compliance with the Workmen's Compensation Act. In reaching that conclusion, we relied on the Commissioners' notes to the 1939

---

**6.** We express no opinion on the existence of negligence on the part of the County. Nor do we comment on Valk's liability to the plaintiffs.

**7.** We have since abrogated interspousal immunity. *Boblitz v. Boblitz*, 296 Md. 242, 462 A.2d 506 (1983).

version of the UCATA. As quoted in *Schriefer*, these notes stated that 1) "[t]he common obligation contemplated by this Act is the common liability of the tortfeasors to suffer adverse judgment at the instance of the injured person whether or not the injured person elects to impose it" and 2) the Act "permits contribution among all tortfeasors whom the injured party could hold liable jointly and severally for the same damage or injury . . . ." *Schriefer*, 183 Md. at 680, 39 A.2d at 860–61. These comments clearly reflect the Act's assumption that contribution from a third party defendant is predicated on his or her direct liability to the plaintiff.[8]

We have since described that case as holding "that there [is] no right of contribution where the injured person has no right of action against the third party defendant." *Stem v. Nello L. Teer Co.*, 213 Md. 132, 142, 130 A.2d 769, 774 (1957). Similarly in *Hatzinicolas v. Protopapas*, 314 Md. 340, 550 A.2d 947 (1988), Judge Rodowsky, writing for the majority, noted that "[o]ur cases have held that there is no right to contribution from an alleged joint tortfeasor who enjoys immunity as to the plaintiff's claim, because there is no common liability to the plaintiff." *Id.* at 353, 550 A.2d at 954; *see generally* 5 MLE *Contribution* § 3 at 548–49 (1960) ("The Act applies only where there is a common liability to an injured person in tort, and where an injured person has no right of action against a third person, there can be no contribution entitling defendant to join the third person as defendant under the Act, notwithstanding the liability under the Act may be joint or several, since the right of contribution is a derivative right and not a new cause of action.") (footnotes omitted).

The reasoning of the *Schriefer* case has been extended by the United States District Court for the District of Mary-

---

**8.** We also noted that, in the case of worker's compensation, "[t]he employer should not be held liable indirectly in an amount that could not be recovered directly, for this would run counter to one of the fundamental purposes of the compensation law." 183 Md. at 681, 39 A.2d at 861.

land to cases of parent-child immunity. In *Zaccari v. United States,* 130 F.Supp. 50 (D.Md.1955), the court held that the defendant could not seek contribution from the plaintiff's father because the plaintiff was barred from suing her father under Maryland law.[9] *Schriefer* and *Zaccari* have been relied on by other courts for the proposition that there must be common liability to the plaintiff in order to obtain contribution. *E.g. Robinson v. Adco Metals, Inc.,* 663 F.Supp. 826, 831 (D.Del.1987).

Federal courts applying Maryland law continue to sustain this general proposition. In *Fischbach & Moore Int'l v. Crane Barge R–14,* 476 F.Supp. 282 (D.Md.1979), *aff'd,* 632 F.2d 1123 (4th Cir.1980), the lower court noted that "any entitlement to contribution which a concurrent wrongdoer may have from another culpable party arises from the duty each of the wrongdoers owes to the injured party, as opposed to no obligation running among themselves." This point was later reiterated in *Pyramid Condominium Ass'n v. Morgan,* 606 F.Supp. 592 (D.Md.1985): "When a plaintiff has no right of action against a third party, there can be no contribution entitling the defendant to join the third party as a defendant under the Uniform Act, notwithstanding the fact that liability under the Act may be joint or several." *Id.* at 598.

The majority of UCATA jurisdictions have barred contribution where interspousal or parent-child immunity exists. *Welter v. Curry,* 260 Ark. 287, 539 S.W.2d 264 (1976) (parent-child immunity); *Short Line, Inc. v. Perez,* 238 A.2d 341 (Del.1968) (interspousal immunity); *Strahorn v. Sears, Roebuck & Co.,* 50 Del. 50, 123 A.2d 107 (1956) (parent-child immunity); *Rodgers v. Galindo,* 68 N.M. 215, 360 P.2d 400 (1961) (interspousal immunity), *overruled on other*

---

**9.** We recently reaffirmed the doctrine of parent-child immunity in *Frye v. Frye,* 305 Md. 542, 505 A.2d 826, 827 (1986). However, we have since declined to extend that immunity to a parent's business partner for acts of negligence committed in the operation of the partnership. *Hatzinicolas v. Protopapas,* 314 Md. 340, 550 A.2d 947 (1988).

*grounds, Maestas v. Overton,* 87 N.M. 213, 531 P.2d 947, 948 (1975); *Lee v. Mowett Sales Co.,* 316 N.C. 489, 342 S.E.2d 882, 883 (1986) (parent-child immunity); *Moler v. Quality Chevrolet, Inc.,* 2 Ohio App.3d 120, 440 N.E.2d 1228, 1229 (1981) (interspousal immunity), *overruled on other grounds, Shearer v. Shearer,* 18 Ohio St.3d 94, 480 N.E.2d 388 (1985); Tenn.Code Ann. § 29–11–102(a) (1980) (barring contribution in the context of immunities); [10] *see Liberty Mut. Ins. Co. v. Westerlind,* 374 Mass. 524, 373 N.E.2d 957, 959 (1978) (barring contribution under the Workmen's Compensation Act on the rationale that the language of the UCATA "requires that the potential contributor be directly liable to the plaintiff."); *Burmeister v. Youngstrom,* 81 S.D. 578, 139 N.W.2d 226 (1965) (barring contribution in the context of a guest statute by reasoning which strongly suggests that the same would be true for any immunity). In concluding that contribution is barred due to immunity, these states typically rely on the Commissioners' notes, the Act's specific language and its purpose to prevent the whim of the plaintiff from determining who bears the cost of damages.

In sum, the "traditional view is that there can be no contribution between concurrent tortfeasors unless they share a 'common legal liability' toward the plaintiff.... The contribution action arises from the original obligation that the party cast in contribution owed to the plaintiff."

---

**10.** Many of these jurisdictions have in the past also barred contribution in the context of guest statute immunity. *See Troutman v. Modlin,* 353 F.2d 382, 387 (8th Cir.1965); *Rigsby v. Tyre,* 380 A.2d 1371, 1373 (Del.Super.Ct.1977); *Lutz v. Boltz,* 48 Del. 197, 100 A.2d 647, 648 (1953); *Baldonado v. Navajo Freight Lines,* 90 N.M. 284, 562 P.2d 1138, 1139 (1977), *rev'd on other grounds,* 90 N.M. 264, 562 P.2d 497 (1977). All have done so in the context of worker's compensation. *See C & L Rural Elec. Coop. Corp. v. Kincaid,* 221 Ark. 450, 256 S.W.2d 337 (1953); *Ianire v. University of Delaware,* 255 A.2d 687, 689 (Del. Super.Ct.1969), *aff'd sub nom. Diamond State Tel. Co. v. University of Delaware,* 269 A.2d 52, 55 (Del.1970); *Beal by Boatwright v. Southern Union Gas Co.,* 62 N.M. 38, 304 P.2d 566, 568 (1956); *Johnson v. Catlett,* 246 N.C. 341, 98 S.E.2d 458 (1957); *Lovette v. Lloyd,* 236 N.C. 663, 73 S.E.2d 886, 892 (1953); *Couch v. Thomas,* 26 Ohio App.3d 55, 497 N.E.2d 1372 (1985); Tenn.Code Ann. § 29–11–102(a) (1980).

*Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421, 1434 (5th Cir.1988) (barring contribution due to immunity arising out of Jones Act), *cert. denied sub nom. Lumar Marine, Inc. v. Simeon,* ── U.S. ──, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

Immunities, however, are on the wane. And just as courts have become increasingly reluctant to bar a plaintiff's cause of action, so are they reluctant to bar contribution among unintentional wrongdoers.[11] Four UCATA jurisdictions have allowed contribution despite family immunity. *Paoli v. Shor,* 345 So.2d 789, 790 (Fla.Dist.Ct.App. 1977), *aff'd,* 353 So.2d 825, 826 (Fla.1977); *Campo v. Taboada,* 68 Haw. 505, 720 P.2d 181, 183 (1986); *Puller v. Puller,* 380 Pa. 219, 110 A.2d 175, 177 (1955); *Zarrella v. Miller,* 100 R.I. 545, 217 A.2d 673, 675 (1966). These jurisdictions do not primarily rely on the language of the UCATA or the Commissioners' notes. Instead, these jurisdictions focus on the policies underlying immunity, while relying on precedent predating the UCATA,[12] not commenting on past precedent,[13] or attempting to distinguish contrary holdings under

----

**11.** *See* 3 F. Harper, F. James, & O. Gray, *The Law of Torts* § 10.2 at 47–50 (2d ed. 1986) (favoring contribution despite immunity if the purpose of contribution is to make wrongdoers share the financial burden of their wrong); Comment, *Immunity to Direct Action: Is it a Defense to a Contribution Claim?* 52 U.Colo.L.Rev. 151 (1980) (favoring contribution in cases of parent-child immunity in Colorado on the ground that Colorado law in this area relies on concepts of fault rather than unjust enrichment).

**12.** In allowing contribution in the context of both interspousal and parent-child immunities, Pennsylvania noted that "the theory is that as between the two tortfeasors the contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done." *Puller v. Puller,* 380 Pa. 219, 110 A.2d 175, 177 (1955). The court drew this theory from a case which predated the UCATA. *See Fisher v. Diehl,* 156 Pa.Super. 476, 40 A.2d 912, 917 (1945).

**13.** Hawaii has noted that, "[w]e believe that 'liable' has acquired the technical, legal meaning of 'subject to suit' or 'liable in a court of law or equity,' and the notes of the Commissioners published with the Uniform Act confirm this conclusion." *Tamashiro v. De Gama,* 51 Haw. 74, 450 P.2d 998, 1000 (1969). The court also noted that "[t]hose jurisdictions which have held that 'liable' means 'morally culpable'

worker's compensation law.[14]

In sum, family immunity is held to be a bar to contribution in the majority of UCATA jurisdictions which have considered the issue.[15]

### B.

Like intrafamily immunity, contributory negligence bars recovery against wrongdoers.[16] But, whereas intrafamily immunity arises from the status of the wrongdoer, contributory negligence arises from the tortious actions of the injured. We now consider cases that have directly reviewed

---

have strained the language of the Act in order to avoid and limit the unjust effects of the immunity doctrines existing in their jurisdictions." *Id.* Without discussing *Tamashiro*, the court later held that interspousal immunity did not bar contribution. *Campo v. Taboada*, 68 Haw. 505, 720 P.2d 181 (1986).

14. *See Seaboard Coast Line R.R. Co. v. Smith*, 359 So.2d 427, 429 (Fla.1978) (reasoning that the Workmen's Compensation Act "precludes an employer from being designated a person 'jointly or severally liable in tort for the same injury to person or property' as used in the contribution act. This provision seems to be supported by the great weight of authority. The key words of the contribution act are 'common liability' to the employee. Such common liability cannot exist where the employer is immunized from liability by the Compensation Act for tort."); *Cacchillo v. H. Leach Mach. Co.*, 111 R.I. 593, 305 A.2d 541, 542 (1973) ("[t]here can be no contribution unless the injured person has a right of action in tort against both the party seeking contribution and the party from whom contribution is sought. The right of contribution is a derivative right and not a new cause of action.") (quoting *Rowe v. John C. Motter Printing Press Co.*, 273 F.Supp. 363, 365 (D.R.I.1967)).

15. Alaska, Arizona, Colorado, Nevada, North Dakota and South Carolina do not appear to have considered the issue.

16. Valk argues that contributory negligence is more like a statute of limitations than immunity in terms of barring third party claims. Valk refers to *Cotham and Maldonado v. Board*, 260 Md. 556, 273 A.2d 115 (1971), where we held that failure to issue notice within 180 days to a municipal entity does not bar a third party defendant's indemnity claim against a defendant. We disagree with Valk's comparison. Both immunity and contributory negligence arise directly out of the wrongdoing itself. By contrast, a statute of limitations defense depends on litigation procedures transpiring after the wrongdoing has occurred.

the availability of contribution in the context of contributory negligence, as opposed to family immunities.

This issue has frequently arisen in the past in the context of the Federal Employees Liability Act ("FELA"). "[I]n FELA suits contributory negligence is not available as a defense against a plaintiff and is allowed only in mitigation of damages. Nonetheless, the third party defendant may assert plaintiff's contributory negligence as a bar to any recovery on the third party claim." 6 Wright and Miller, *Federal Practice and Procedure* § 1455 at 30 (1971). Thus courts have barred contribution against a third party defendant who has the defense of contributory negligence. *Kennedy v. Pennsylvania R.R. Co.*, 282 F.2d 705, 708–09 (3rd Cir.1960); *Fort Worth & Denver Ry. Co. v. Threadgill*, 228 F.2d 307, 312 (5th Cir.1955); *Reynolds v. Southern Ry. Co.*, 320 F.Supp. 1141, 1145 (N.D.Ga.1969); *Panichella v. Pennsylvania R.R. Co.*, 167 F.Supp. 345, 352 (D.Pa.1958), *rev'd in part aff'd in part on other grounds*, 268 F.2d 72 (3rd Cir.1959), *cert. denied*, 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960); *Lawrence v. Great No. Ry. Co.*, 98 F.Supp. 746 (D.C.Minn.1951), *aff'd sub nom. Waylander–Peterson Co. v. Great No. Ry. Co.*, 201 F.2d 408 (8th Cir.1953); *Wallace v. New Orleans Pub. Belt R. Co.*, 78 F.Supp. 724, 726 (E.D.La.1948), *rev'd on other grounds*, 173 F.2d 145 (5th Cir.1949); *Seaboard Coast Line R.R. Co. v. McKelvey*, 259 So.2d 777, 780 (Fla.Dist.Ct.App.1972), *aff'd*, 270 So.2d 705 (Fla.1972); *Katcher v. Heidenwirth*, 254 Iowa 454, 118 N.W.2d 52, 54–55 (1962). Similar results have transpired in the area of the Jones Act. *See Spaulding v. Parry Navigation Co.*, 187 F.2d 257, 260–61 (2d Cir.1951), *cert. denied sub nom. Parry Navigation v. Todd Shipyards Corp.*, 342 U.S. 918, 72 S.Ct. 362, 96 L.Ed. 686 (1952); *Pabellon v. Grace Line, Inc.*, 12 F.R.D. 123 (D.C.N.Y.1951); *Ginsburg v. Standard Oil Co.*, 5 F.R.D. 48, 50 (D.C.N.Y.1945).

While these cases do not extensively analyze the implicated contribution statutes, their outcome appears to be the natural consequence of the debate that has raged over family immunities. As Professors Prosser and Keeton have

summed it up: "If there was never any liability [to the plaintiff], as where the contribution defendant has the defense of family immunity, assumption of risk, or the application of an automobile guest statute, or the substitution of workers' compensation for common law liability, then there is no liability for contribution." *Prosser & Keeton on the Law of Torts* § 50 at 339–40 (W. Page Keeton 5th ed. 1984). This position has been specifically adopted by the *Restatement (Second) of Torts* § 886A & comment g (1979).[17]

## V.

▮▮▮▮ In conclusion, contribution under the UCATA as enacted in Maryland is predicated on a wrongdoer's direct liability to the plaintiff. Where the law, as in this case, shields one of two wrongdoers with the defense of contributory negligence, the UCATA does not currently remove that shield. In the future, the legislature may allow contribution either by altering the UCATA or by abrogating or limiting such shields as contributory negligence.[18] *See Harrison v. Montgomery County Bd. of Educ.*, 295 Md. 442, 456 A.2d 894 (1983) (noting that it is for the legislature to

---

**17.** Section 886A(1) states in part that "when two or more persons become *liable in tort to the same person* for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them." (Emphasis added).

Comment g states in part:

If the one from whom contribution is sought is not in fact liable to the injured person, he is not liable for contribution. This is true, for example, if he has one of the immunities from liability heretofore recognized for members of the plaintiff's family, charities and governments. [reference omitted]. This is also true when his tort liability has been superseded by a worker's compensation act or when he is not liable to the injured person by reason of the provisions of an automobile guest act or the defense of assumption of risk. In other words, his defense cannot be circumvented by the plaintiff's recovery against another tortfeasor, followed by a suit for contribution.

**18.** If comparative negligence were the law of Maryland, there would be no absolute bar to the recovery of the plaintiffs from the County. And the negligence claim against the County might therefore have gone to the jury. Depending on the jury's determination, the County might have been liable to Valk for contribution.

determine whether the defense of contributory negligence should be abrogated in Maryland).

But until that time, we are bound to abide by the statute as it is written. Under the statute, contribution is available only among joint tortfeasors. A joint tortfeasor must be legally responsible to the plaintiff for his or her injuries. Here the County was not liable to the plaintiffs and therefore is not a joint tortfeasor subject to contribution. Thus, the trial court properly dismissed Valk's cross-claim against the County for contribution.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REINSTATING THE CROSS–CLAIM REVERSED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT VALK MANUFACTURING COMPANY.