Robin B. Quinn, Personal Representative for Jo Ann Allen v. General Electric Company, et al., Misc. No. 2, September Term, 2025

**PRODUCTS LIABILITY – STRICT LIABILITY – DESIGN DEFECT – ASBESTOS –** Supreme Court of Maryland held that with respect to strict liability design defect claim in asbestos product case, household member of consumer or user of product at issue who alleges injury based on exposure, through no fault of their own, to asbestos dust brought home on work clothing of consumer or user is not required to prove duty in addition to four elements of strict liability action set forth in Phipps v. Gen. Motors Corp., 278 Md. 337, 344, 363 A.2d 955, 958 (1976).

Supreme Court concluded that elements of strict liability design defect claim are distinct from those of strict liability failure to warn and negligence claims. Case law addressing whether defendant owes duty to plaintiff with respect to strict liability failure to warn claim does not mandate that person in plaintiff's position prove duty as element in asbestos product strict liability design defect claim. Although concepts of negligence and strict liability have morphed together in failure to warn cases, duty is not required element of strict liability design defect claim for user and consumer or for person in plaintiff's position.

District of Columbia Court of Appeals
Case No. 24-CV-0199

District of Columbia Superior Court
Case No. 2020-CA-003862-A

Argued: November 4, 2025

IN THE SUPREME COURT

OF MARYLAND

Misc. No. 2

September Term, 2025

_____

ROBIN B. QUINN, PERSONAL
REPRESENTATIVE FOR JO ANN ALLEN

v.

GENERAL ELECTRIC COMPANY, ET AL.

_____

Fader, C.J.
Watts
Booth
Biran
Eaves
Killough
Raker, Irma S. (Senior Justice,
Specially Assigned),

JJ.

_____

Opinion by Watts, J.

_____

Filed: April 27, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case is before us pursuant to a certification order[1] of the District of Columbia Court of Appeals ("the Court of Appeals"), asking that we answer the following question:

> Under Maryland law, in a strict liability design defect claim, must a plaintiff who alleges that she was injured as a bystander (in contrast to a "user" or "consumer" as defined in *Valk Manufacturing Company v. Rangaswamy*, 537 A.2d 622, 629 (Md. Ct. Spec. App. 1988), *rev'd on other grounds*, 562 A.2d 1246 (Md. 1989)) prove an additional element—the element of duty—beyond the four "essential elements of an action in strict liability as set forth in [the Restatement (Second) of Torts] § 402A," *Phipps v. General Motors Co.*, 363 A.2d 955, 958 (Md. 1976), to recover, and if so, what factors are used to determine whether a duty is owed?

(Alteration in original).

According to the certification order, in the Superior Court of the District of Columbia ("the Superior Court"), the wife of a deceased worker brought a products liability action, with a strict liability for design defect claim, against her husband's former employer and various other defendants, including General Electric Company ("General Electric"), Appellee, seeking damages for mesothelioma and lung cancer caused by exposure to asbestos from dust brought home on her former husband's work clothes. The trial court granted General Electric's motion for summary judgment.

On appeal, the Court of Appeals vacated the trial court's grant of summary judgment and remanded the case for further proceedings. On remand, the trial court again granted summary judgment in General Electric's favor as to the strict liability design defect claim,

---

[1]Pursuant to the Maryland Uniform Certification of Questions of Law Act, Md. Code Ann., Cts. & Jud. Proc. (1974, 2020 Repl. Vol., 2023 Supp.) ("CJ") §§ 12-601 to 12-613, a court certifying a question to this Court shall issue a certification order setting forth "(1) [t]he question of law to be answered; [and] (2) [t]he facts relevant to the question[.]" CJ § 12-606(a).

and the plaintiff appealed. After briefing and oral argument, the Court of Appeals certified the question of law set forth above to this Court.

Because neither the information presented to this Court in the certification order nor the Appellate Court of Maryland's holding in Valk Mfg. Co. v. Rangaswamy, 74 Md. App. 304, 537 A.2d 622 (1988), rev'd on other grounds sub nom., Montgomery Cnty. v. Valk Mfg. Co., 317 Md. 185, 562 A.2d 1246 (1989), contains a specific definition of the term "bystander," to avoid any ambiguity, we will address the question of whether a person in the position of Jo Ann Allen ("Mrs. Allen"), who is a household member of a consumer or user of the product at issue but not a user or consumer herself, must prove the additional element of duty. Pursuant to our authority under Md. Code Ann., Cts. & Jud. Proc. (1974, 2020 Repl. Vol., 2023 Supp.) § 12-604, we have reformulated the certified question as follows:

> Under Maryland law, in a strict liability design defect claim, must a person in the position of the decedent, Mrs. Allen—a household member of a "consumer" or "user" as the terms are defined in Valk Mfg. Co. v. Rangaswamy, 74 Md. App. 304, 318, 537 A.2d 622, 629 (1988), rev'd on other grounds sub nom., Montgomery Cnty. v. Valk Mfg. Co., 317 Md. 185, 562 A.2d 1246 (1989), who alleges injury based on exposure to asbestos dust brought home on the work clothing of the consumer or user—prove an additional element, the element of duty, beyond the four "essential elements of an action in strict liability [as] set forth in [the Restatement (Second) of Torts §] 402A," Phipps v. Gen. Motors Corp., 278 Md. 337, 344, 363 A.2d 955, 958 (1976), to recover, and if so, what factors are used to determine whether a duty is owed?[2]

---

[2]General Electric suggests that the question presented should be reformulated to reflect that the issue presented in this case is: "Does the scope of a product seller's strict liability based on design defect extend beyond the scope of its strict liability based on failure to warn, to include a claimant who was not a user, consumer or bystander to the use of the product?" According to General Electric, a bystander is "someone present when and

Our answer is "no." We hold that with respect to an asbestos product strict liability design defect claim, a person in the position of Mrs. Allen—a household member of a consumer or user of the product at issue who alleges injury caused, through no fault of her own, by exposure to asbestos from dust brought home on the work clothing of the consumer or user—is not required to prove the element of duty in addition to the four elements of an action in strict liability set forth in Phipps, 278 Md. at 344, 363 A.2d at 958.

Our holding flows directly from this Court's holding in Phipps, id. at 352, 363 A.2d at 963—that "[p]roof of a defect in the product at the time it leaves the control of the seller implies fault on the part of the seller sufficient to justify imposing liability for injuries caused by the product"—and the Appellate Court's holding in Valk, 74 Md. App. at 323, 537 A.2d at 632, with which we agree, that bystanders—nonusers and non-consumers— "are protected under the doctrine of strict liability in tort."

In Valk, id. at 318, 537 A.2d at 629, after an extensive review of case law in the developing area of products liability law, the Appellate Court concluded that "[t]he unmistakable movement over recent decades has been toward vastly expanded coverage in

where the products at issue were used" and if Mrs. Allen satisfied that requirement, she would "clearly fall within a class of plaintiffs who can assert a strict liability design defect claim against the product seller." General Electric contends that the purpose of certifying the question to this Court was for us to determine whether "a person who was never present when and where the products at issue were used is a bystander within the scope of a product seller's tort duty." Although we have not reformulated the question as General Electric asks and do not adopt its definition of the word "bystander," our reformulation takes into account the circumstance that Mrs. Allen's alleged exposure occurred as a result of asbestos dust brought into her home.

the products liability field" and that "[t]he last and most recent expansion has embraced third-party beneficiaries or bystanders as well." As the Appellate Court explained:

> An appreciation of the significant change that has taken place in recent decades in the undergirding philosophy of tort law with respect to products liability will help to liberate us from earlier limiting notions such as 1) some duty of care on the part of the manufacturer/seller (a heavy factor under contractual theories of liability based on express or implied warranties as well as in negligence law) and 2) the necessity for some sort of moral fault or blame in the manufacturer/seller (a dominant factor in 19th Century tort law).

Id. at 311, 537 A.2d at 625-26.

The Appellate Court adopted a view that we discussed in Phipps, namely, that "[s]trict liability in tort is today largely a societal decision that the cost of injury should be borne by those best able to bear such costs." Valk, 74 Md. App. at 311, 537 A.2d at 626. In Phipps, 278 Md. at 343, 363 A.2d at 958, we explained that various justifications have been set forth by courts for imposing strict liability on manufacturers. Among the justifications we discussed were that "imposing strict liability on manufacturers for defective products is equitable because it shifts the risk of loss to those better able financially to bear the loss[,]" and "the requirement of proof of a defect rendering a product unreasonably dangerous is a sufficient showing of fault on the part of the seller to impose liability without placing an often impossible burden on the plaintiff of proving specific acts of negligence." Id. at 343, 363 A.2d at 958. We concluded that proof of a defect in the product at the time it leaves the control of the seller implies culpability on the part of the seller sufficient to warrant imposing liability for injuries caused by the product. See id. at 352, 363 A.2d at 963.

In accord with the principles set forth above, in response to the reformulated question, we conclude that, to prove a strict liability design defect claim in an asbestos case, a person in the position of Mrs. Allen need not prove the additional element of duty, which is an element generally associated with proof of negligence and failure to warn claims, and an element that exceeds those of a claim for strict liability design defect that we adopted in Phipps.

## BACKGROUND

Pursuant to the Maryland Uniform Certification of Questions of Law Act, CJ §§ 12-601 to 12-613, this Court has the power to answer questions of law presented to it. "[I]f the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State[,]" this Court may "answer a question of law certified to it by a court of the United States or by an appellate court of another state[.]" CJ § 12-603. In answering a certified question of law, we accept the statement of facts submitted by the certifying court, and resolve only issues of Maryland law, not questions of fact. See Parler & Wobber v. Miles & Stockbridge, 359 Md. 671, 681, 756 A.2d 526, 531 (2000).

In this case, in its certification order, the Court of Appeals provided the following facts and procedural history as stipulated by the parties, which we summarize.

### Facts

This case involves an asbestos-related personal injury and wrongful death lawsuit

by Robin B. Quinn, Appellant, in which she alleges that the decedent, Mrs. Allen,[3] developed mesothelioma and lung cancer caused by exposure to asbestos from dust brought home on the work clothes of Mrs. Allen's former husband, Willard Phillips. Appellant's action against General Electric relates to asbestos-containing thermal insulation applied by Mr. Phillips and other workers to two General Electric power generation turbines during their construction at Potomac Electric Power Company's ("PEPCO's") Chalk Point power plant in Aquasco, Maryland ("Chalk Point"), from mid-1963 to late-1964. PEPCO's contract with General Electric for the purchase of the turbine-generators required General Electric to furnish all of the thermal insulation materials for the turbines. General Electric ordered the thermal insulation materials from Walter E. Campbell Company ("WECCO"), which was an insulation supplier and contractor and Mr. Phillips's employer. Pursuant to a separate contract between WECCO and PEPCO, professional insulators who were employed by WECCO, such as Mr. Phillips, installed the insulation materials on the turbines.

Mr. Phillips is deceased and did not testify in the case. Donald Burroughs, a coworker of Mr. Phillips, testified about his work with Mr. Phillips at Chalk Point as follows. Mr. Burroughs and Mr. Phillips were among numerous insulators employed by WECCO to insulate the two turbines manufactured by General Electric. It took a total of eight to ten weeks to install insulation on the two turbines, at the rate of four to five weeks

---

[3]On brief, the parties advise that Mrs. Allen instituted the asbestos product liability action on September 2, 2020, in the Superior Court. After Mrs. Allen's death, on November 15, 2021, Appellant, the personal representative of Mrs. Allen's estate, was substituted as plaintiff.

per turbine. Installing insulation on the turbines was only part of the insulation work that Mr. Burroughs and Mr. Phillips performed at Chalk Point over a period of 18 months. The process of installing asbestos-containing insulation material on the General Electric turbines at Chalk Point emitted significant dust in the areas where Mr. Burroughs and Mr. Phillips worked. Neither WECCO, (Mr. Phillips's employer), nor the general contractor (Bechtel), nor PEPCO (the site owner) provided facilities for the people who worked as insulators at Chalk Point to change clothes and shower before departing work. Therefore, Mr. Phillips wore his work clothes home every day.

Mrs. Allen testified that during her marriage to Mr. Phillips, she shook and laundered his dusty work clothing every other day. Mrs. Allen never visited Chalk Point.

In opposition to a motion for summary judgment by General Electric, Appellant submitted an affidavit by an expert, Barry Castleman, listing sources that Appellant asserted demonstrate that "the need to avoid taking hazardous substances, and specifically asbestos, home on clothing" was established in the scientific community prior to 1965. General Electric countered that these references are largely unrelated to asbestos and, in any event, reflect concern with protecting workers from continued exposure beyond the worksite, not the protection of members of the workers' households.

Appellant's expert in occupational medicine, Dr. Arthur Frank, reviewed the facts of the case and Mrs. Allen's medical records and concluded that Mrs. Allen developed, and died from, malignant mesothelioma caused by exposure to asbestos dust generated by the

defendants'[4] asbestos products and brought home on her husband's work clothing.

## Procedural History

In the Superior Court, Appellant asserted claims against General Electric for negligence, strict liability for failure to warn, and strict liability for design defect. On April 27, 2022, the Superior Court entered summary judgment in General Electric's favor as to all claims. Appellant appealed the ruling only as to the strict liability design defect claim. On April 5, 2023, the Court of Appeals vacated the grant of summary judgment as to Appellant's strict liability design defect claim. The Court of Appeals concluded that General Electric's summary judgment motion did not present an adequate challenge to that specific claim. The case was remanded for further proceedings, and, on remand, General Electric again filed a motion for summary judgment as to Appellant's claim of strict liability for design defect. On January 31, 2024, after briefing on the motion by the parties, the Superior Court granted General Electric's motion and entered summary judgment as to Appellant's claim of strict liability for design defect. The Superior Court determined, as a matter of Maryland law, that Mrs. Allen was a bystander who could not recover on a strict liability theory. Appellant appealed. After briefing and oral argument, on April 18, 2025, the Court of Appeals entered an order directing the parties to show cause why the question of law at issue should not be certified to this Court. On June 10, 2025, the Court of Appeals ordered that the question of law described herein be certified to this Court.

---

[4]Mrs. Allen filed a complaint against numerous defendants, including General Electric.

## DISCUSSION

## Strict Liability Design Defect Claim

A plaintiff bringing a strict liability design defect claim is not required to prove any specific act of negligence on the part of a seller. See Phipps, 278 Md. at 344, 363 A.2d at 958. "The relevant inquiry in a strict liability action focuses not on the conduct of the manufacturer but rather on the product itself." Id. at 344, 363 A.2d at 958 (citation omitted). Strict liability subjects sellers of defective and unreasonably dangerous products to liability for harm caused by their products. See id. at 344, 363 A.2d at 959. A seller of "any product in a defective condition unreasonably dangerous to the user or consumer" is liable even where "the seller has exercised all possible care in the preparation and sale of his product[.]" Id. at 341, 363 A.2d at 957 (quoting Restatement (Second) of Torts § 402A). Sellers include the manufacturers of products and any person or entity in the distribution chain. See id. at 343-44, 363 A.2d at 958-59 (referring to "seller" and "manufacturer"); see also Halliday v. Sturm, Ruger & Co., Inc., 368 Md. 186, 201, 792 A.2d 1145, 1154 (2002) (We stated that strict liability relieves "persons injured by products from the requirement of proving negligence on the part of manufacturers or others in the distribution chain" and instead focuses "on the product itself," thereby making "it easier to obtain a recovery for a defectively designed or manufactured product.").

In Phipps, 278 Md. at 344, 353, 363 A.2d at 958, 963, this Court adopted the theory of strict liability and the elements necessary to establish a strict liability design defect claim

as expressed in the Restatement (Second) of Torts § 402A.[5]  The elements of a strict liability design defect claim as adopted in <u>Phipps</u>, 278 Md. at 344, 363 A.2d at 958, are that (1) the product was defective at the time it left the control of the seller, (2) it was unreasonably dangerous to the user or consumer, (3) the defect was a cause of the injuries, and (4) the product was expected to and did reach the consumer without substantial change in its condition.  Among the bases for imposing strict liability is that the seller, by marketing its product for use, "has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it[.]"  <u>Id.</u> at 352, 363 A.2d at 963

---

[5]At that time, as to strict liability claims, the Restatement (Second) of Torts § 402A (1965) provided:

Special Liability of Seller of Product for Physical Harm to User or [C]onsumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

<u>Phipps</u>, 278 Md. at 341, 363 A.2d at 957 (internal quotation marks omitted).

- 10 -

(citation omitted).

Strict liability evolved from warranty law, as courts began forgoing the requirement that an injured party demonstrate that he or she was in privity with the seller. See Restatement (Second) of Torts § 402A cmt. b. "[T]he requirement of privity, once an obstacle to recovery under a contract action, and a major reason for the adoption of [§] 402A of the Restatement (Second), [was] eliminated by the General Assembly of Maryland in actions where personal injuries result from a breach of warranty." Phipps, 278 Md. at 349, 363 A.2d at 961 (citing "Sections 2-318 and 2-314 of the Maryland Uniform Commercial Code"; Fricks v. Gen. Motors Corp., 278 Md. 304, 309, 363 A.2d 460, 462-63 (1976)). Despite the elimination of the privity requirement, though, there remained other requirements and limitations imposed by contract law in an action for breach of warranty, such as the right of the seller to disclaim or limit remedies for breach of warranty that are not applicable when damages are sought for injury caused by a defective product under the theory of strict liability in tort. See id. at 349, 363 A.2d at 961-62. With a strict liability design defect claim, however, the "limitation or exclusion of warranties is irrelevant to the question of the seller's liability for injury caused by defective goods regardless of the classification of the goods[.]" Id. at 349, 363 A.2d at 962 (citation modified).

As explained in Nissen Corp. v. Miller, 323 Md. 613, 623, 594 A.2d 564, 569 (1991), "[w]e adopted the theory of strict liability in tort to foreclose the unfair result 'where injured parties are forced to comply with the *proof requirements* of negligence actions or are confronted with the *procedural requirements* and limitations of warranty

actions.'" (Quoting Phipps, 278 Md. at 353, 363 A.2d at 963). We stated:

> It is clear that Maryland espoused the doctrine of strict liability in tort in order to relieve plaintiffs of the burden of proving specific acts of negligence by permitting negligence to be implied where plaintiffs can prove a product is defective and unreasonably dangerous when placed in the stream of commerce.

Id. at 624, 594 A.2d at 569. "[I]nherent in our recognition of strict products liability is the concept that sellers who place defective and unreasonably dangerous products on the market are at fault when a user is injured by that activity and should bear responsibility." Id. at 624, 594 A.2d at 569.

**Strict Liability Design Defect Versus Other Theories of Strict Liability**

There are three separate theories of strict liability under which a product may be dangerous or defective: (1) there is a flaw in the product at the time of sale making it more dangerous than intended ("manufacturing flaw" or "defective construction"); (2) the manufacturer of the product fails to warn adequately of a risk or hazard related to the way the product was designed ("failure to warn"); or (3) the product has a defective design ("design defect"). See, e.g., Gourdine v. Crews, 405 Md. 722, 743 n.11, 955 A.2d 769, 782 n.11 (2008) (We noted that the Restatement (Second) of Torts § 402A applies in "defective design, defective construction, and failure to warn cases[.]" (Citation omitted)). The standards of liability for a claim under each theory are different.

With respect to a manufacturing defect claim, under the Second Restatement, the elements of a strict liability manufacturing defect claim include that the product must be defective or unreasonably dangerous, that the defect arose from errors in the manufacturing process, not the product's design, and the defect or danger must have existed at the time

the product left the manufacturer's control.  See Restatement (Second) of Torts § 402A.

In a strict liability failure to warn claim, the primary assertion is that a seller failed to provide adequate warnings or instructions about the danger of the product, and that an injury occurred as a result of an undisclosed risk.  See, e.g., Owens-Illinois, Inc. v. Zenobia, 325 Md. 420, 433, 437, 601 A.2d 633, 639, 641 (1992) ("[T]he seller is required to give warning against the danger, if [the seller] has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the danger." (Citation modified)).  In a failure to warn case, a plaintiff is not required to allege that a product has a defect.  Id. at 438 n.8, 601 A.2d at 641 n.8 ("In a strict liability failure to warn case, the alleged defect is the failure of the seller to give an adequate warning.").

A strict liability failure to warn claim "bears a strong resemblance to a claim of negligence[,]" as "[c]oncepts of duty, breach, causation, and damages are present in both." Gourdine, 405 Md. at 743, 955 A.2d at 782 (citation modified).  A strict liability failure to warn claim is often brought along with a negligent failure to warn claim, and requires proof of a duty to warn and a violation or breach of the duty, while a strict liability design defect claim does not require proof of a duty.  See, e.g., May v. Air & Liquid Sys. Corp., 446 Md. 1, 9, 129 A.3d 984, 988-89 (2015); Gourdine, 405 Md. at 743, 955 A.2d at 782; Phipps, 278 Md. at 344, 351-52, 363 A.2d at 958, 963.

In describing the basis for a failure to warn claim, quoting a principle that was first stated in 2 Fowler Harper & Fleming James, *The Law of Torts*, § 28.3 (1956) and William Prosser, *The Law of Torts*, § 31 (4th ed. 1971), we have explained that "a manufacturer's duty to produce a safe product, with appropriate warnings and instructions when necessary,

is no different from the responsibility each of us bears to exercise due care to avoid unreasonable risks of harm to others." May, 446 Md. at 9, 129 A.3d at 988 (quoting Moran v. Fabergé, Inc., 273 Md. 538, 543, 332 A.2d 11, 15 (1975)). In Moran, 273 Md. at 552, 332 A.2d at 20, a products liability case alleging a negligent failure to warn claim, we described the framework for the analysis of negligent failure to warn cases:

> Based on this negligence law we think that in the products liability domain a duty to warn is imposed on a manufacturer if the item it produces has an inherent and hidden danger about which the producer knows, or should know, could be a substantial factor in bringing injury to an individual or his property when the manufacturer's product comes near to or in contact with the elements which are present normally in the environment where the product can reasonably be expected to be brought or used.

(Citation modified).

In May, 446 Md. at 23, 129 A.3d at 997, and Zenobia, 325 Md. at 433, 436, 601 A.2d at 639, 641, we explained that Comment j of the Restatement (Second) of Torts § 402A is applicable to strict liability failure to warn claims. Comment j of § 402A states that a "seller is required to give warning against [a danger], if [the seller] has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the . . . danger." Comment j distinguishes a product containing an adequate warning from a defective product, stating that "a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Zenobia, 325 Md. at 433, 601 A.2d at 639 (quoting Restatement (Second) of Torts § 402A cmt. j).

In May, 446 Md. at 24, 129 A.3d at 997, and Gourdine, 405 Md. at 743, 955 A.2d at 782, we explained that "negligence concepts and those of strict liability have 'morphed

- 14 -

together' . . . in failure to warn cases." (Citations modified).  Under both a negligence and strict liability theory failure to warn claim, a plaintiff bringing a failure to warn claim must establish the following: (1) that the defendant owed a duty to warn; (2) that the defendant breached that duty; (3) there was a direct causal connection between the defendant's failure and the alleged injuries; and (4) that the plaintiff was harmed.  See Gourdine, 405 Md. at 738, 955 A.2d at 779; Mayor & City Council of Baltimore v. B.P. P.L.C., ___ Md. ___, ___ A.3d ___, No. 11, Sep. Term, 2025, 2026 WL 809501, at *31 (Md. Mar. 24, 2026).  Thus, to establish a strict liability failure to warn claim, a plaintiff must prove both duty and breach of the duty, whereas there are no such requirements in a strict liability design defect claim.

### Valk's Expansion of Strict Liability in a Design Defect Claim

In Valk, 74 Md. App. at 307-08, 317-18, 537 A.2d at 623-24, 629, the Appellate Court addressed whether plaintiffs alleging a strict liability design defect claim could recover under the doctrine of strict liability as "bystander[s]."[6]  The manufacturer argued that the driver of the vehicle fit into neither the category of consumer nor user.  See id. at

---

[6]The driver of a vehicle died as a result of a motor vehicle accident in which he was struck by a Montgomery County dump truck that had a snowplow hitch with a steel lift arm mounted on its front that protruded into the driver's vehicle as the dump truck struck the driver's door.  See Valk, 74 Md. App. at 307-08, 537 A.2d at 623-24.  The plaintiffs—the driver's widow and minor child—sued the manufacturer of the snowplow hitch alleging negligence and strict liability for design defect.  See id. at 308, 313, 537 A.2d at 624, 626.  A jury awarded the plaintiffs $2.5 million on the strict liability claim.  See id. at 308, 537 A.2d at 624.  On appeal, the manufacturer contended that the trial court erred in failing to grant its motion for judgment and/or motion for judgment notwithstanding the verdict because, according to the manufacturer, the plaintiffs failed to make a *prima facie* showing of liability under the doctrine of strict liability.  See id. at 308-09, 537 A.2d at 624.

- 15 -

318, 537 A.2d at 629. The Appellate Court observed that the Restatement (Second) of Torts § 402A cmt. l defines a "consumer" as "one who purchases a product or who is a member of the family of the final purchaser, his employee, a guest at his table, or a donee of the purchaser[,]" and "users" are "those who passively enjoy the benefit of the product." Valk, 74 Md. App. at 318, 537 A.2d at 629. The Appellate Court explained that, although under its express terms, the Restatement (Second) of Torts § 402A applies only to users and consumers, in Comment o, the authors of the Restatement neither approved nor disapproved of the extension of strict liability to bystanders. See id. at 320, 537 A.2d at 630. Comment o states in relevant part:

> Casual bystanders, and others who may come in contact with the product, as in the case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile, have been denied recovery. There may be no essential reason why such plaintiffs should not be brought within the scope of the protection afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys a marketed product; but the social pressure which has been largely responsible for the development of the rule stated has been a consumers' pressure, and there is not the same demand for the protection of casual strangers. The Institute expresses neither approval nor disapproval of expansion of the rule to permit recovery by such persons.[7]

Restatement (Second) of Torts § 402A cmt. o. The Appellate Court explained:

> Section 402A is premised upon the assumption that a seller assumes a special responsibility to the public; that the public has a right to expect reputable sellers to stand behind their products; that public policy demands the costs of injuries due to defective products be placed on those who market them; and that such injuries are properly treated as a cost of production and insurable

---

[7]The "Institute" refers to The American Law Institute, which "is a private, independent, nonprofit organization that publishes Restatements of the Law," The American Law Institute, Frequently Asked Questions (2024), https://www.ali.org/faq [https://perma.cc/MRD3-W3YQ], including the Restatement (Second) of Torts, see Restatement (Second) of Torts Intro. (1965).

risks by those in the best position to seek such protection. Jurisdictions extending liability to the "bystander" point to these general policies as ample justification.

Valk, 74 Md. App. at 321, 537 A.2d at 630.

After a thorough review of case law of other jurisdictions, the Appellate Court concluded that "[m]ost jurisdictions, when called upon to do so, have extended the strict liability doctrine to provide relief to bystanders." Id. at 322, 537 A.2d at 631 (citation modified). The Appellate Court was persuaded by the action of other jurisdictions as well as by the "internal logic of the proposition" to extend recovery in strict liability actions to "bystanders," who were neither users nor consumers of a defective product. Id. at 323, 537 A.2d at 631-32. The Appellate Court expressly held that bystanders who are not users or consumers are protected under the doctrine of strict liability in tort. See id. at 323, 537 A.2d at 632. Although the Appellate Court did not define the term "bystander[,]" the Court made clear that a person who is not a user or consumer may be protected under the doctrine of strict liability.

**Valk and Case Law from Other Jurisdictions**

In Valk, id. at 318-19, 537 A.2d at 629, the Appellate Court explained that coverage for negligence in tort was first expanded by the Court of Appeals of New York in MacPherson v. Buick Motor Co., 111 N.E. 1050 (N.Y. 1916), when that Court held that a "manufacturer, by placing the car upon the market, assumed a responsibility to the ultimate consumer, resting not upon the contract but upon the relation arising from the purchase, together with the foreseeability of harm if proper care were not used." In the years following MacPherson, "the coverage for negligence in tort continued to expand until it

- 17 -

ultimately embraced mere bystanders as well[.]" Valk, 74 Md. App. at 319, 537 A.2d at 630. As explained by the Appellate Court, after coverage based on negligence in tort was expanded, "coverage of remote consumers and users" under strict liability, which was first based on a warranty theory, followed. Id. at 319, 537 A.2d at 629.

In holding that bystanders are protected under the doctrine of strict liability in tort for design defects, the Appellate Court examined cases from other jurisdictions in which courts had reached the same or a similar conclusion. The cases included but were not limited to: Piercefield v. Remington Arms Co., 133 N.W.2d 129 (Mich. 1965); Elmore v. Am. Motors Corp., 451 P.2d 84 (Cal. 1969); Ciampichini v. Ring Bros., Inc., 339 N.Y.S.2d 716 (N.Y. App. Div. 1973); Weber v. Fidelity & Cas. Ins. Co. of New York, 250 So.2d 754 (La. 1971); Embs v. Pepsi-Cola Bottling Co. of Lexington, Ky., Inc., 528 S.W.2d 703 (Ky. 1975); and West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976). See Valk, 74 Md. App. at 321-22, 537 A.2d at 630-31. None of the cases discussed by the Appellate Court in Valk mandated or established a requirement that a bystander must demonstrate that a duty of care was owed to the bystander. To illustrate the point, we will discuss the cases.

In Piercefield, 133 N.W.2d at 133-34, in a breach of warranty action, the Supreme Court of Michigan held that a manufacturer of a defective shotgun shell[8] was liable to a bystander, who was neither a purchaser nor user of the product, where the bystander alleged

---

[8]The plaintiff was injured when the barrel of a shotgun fired by the plaintiff's brother exploded. The shotgun shell had been manufactured by the defendant and the explosion resulted in metal fragments becoming embedded in the plaintiff's brain. See Piercefield, 133 N.W.2d at 133; id. at 130 (O'Hara, J., dissenting).

and proved both "the defect of manufacture upon which he relie[d]" and "injury or damage caused by or resulting from such defect." The Court explained that proof of negligence is not required for breach of an implied warranty claim. See id. at 134. The Court held that because a "manufacturer is best able to control dangers arising from defects of manufacture" and case law in Michigan had put an end to the defense of no privity, "certainly so far as concerns an innocent bystander injured as this plaintiff pleads," such an injured person "should have a right of action against the manufacturer on the theory of breach of warranty as well as upon the theory of negligence." Id. at 134-35 (footnote omitted). The Court explained that this did not establish liability without fault because "a plaintiff relying upon the rule must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains." Id. at 135.

In Elmore, 451 P.2d at 89, the Supreme Court of California held that "the doctrine of strict liability in tort is available in an action for personal injuries by a bystander against the manufacturer and the retailer."[9] In consolidated personal injury and wrongful death actions, at the conclusion of the plaintiffs' case in chief, the trial court granted the

---

[9]In Elmore, 451 P.2d at 85-86, the drive shaft of a station wagon became disconnected, which caused the car to fishtail out of control, cross into the opposite lane of traffic, and strike another vehicle with such impact that the driver of the first vehicle (Sandra Elmore) was hurled from her car onto an embankment. Ms. Elmore suffered head injuries and the driver of the vehicle that Ms. Elmore struck died as a result of the accident. See id. at 85; Waters v. Am. Motors Co., 69 Cal. Rptr. 799 (Cal. Ct. App. 1968), vacated sub nom., Elmore, 451 P.2d 84.

defendants' motions for nonsuit.  See id. at 85.[10]  The Supreme Court of California

reversed, noting that the authors of the Restatement (Second) of Torts had "refrained from

expressing a view as to whether the doctrine of strict liability of the manufacturer and

retailer for defects is applicable to third parties who are bystanders and who are not

purchasers or users of the defective chattel."  Id. at 88, 89 (citation omitted).  The Court

stated that although the authors of the Restatement had pointed out that as of 1965 "no case

had applied strict liability to a person who was not a user or consumer[,]" in two cases in

other jurisdictions courts had "held manufacturers of defective goods strictly liable in tort

for injuries caused to persons who were mere bystanders and were not users or consumers."

Id. at 88 (citing Piercefield, 134 N.W.2d at 134-36; Mitchell v. Miller, 214 A.2d 694, 697-

99 (Conn. Super. Ct. 1965)).

The Court examined relevant California case law, which made "clear that the

doctrine of strict liability may not be restricted on a theory of privity of contract" and that,

because "the doctrine applies even where the manufacturer has attempted to limit liability,"

the doctrine could not be "limited on the theory that no representation of safety is made to

the bystander."  Id.  The Court explained that strict liability "has been based upon the

_____

[10]The Supreme Court of California explained:

> A nonsuit in a jury case or a directed verdict may be granted only when
> disregarding conflicting evidence, giving to the plaintiffs' evidence all the
> value to which it is legally entitled, and indulging every legitimate inference
> which may be drawn from the evidence in plaintiffs' favor, it can be said that
> there is no evidence to support a jury verdict in their favor.

Elmore, 451 P.2d at 87 (citations omitted).

existence of a defective product which caused injury to a human being," and that it had not limited the rules stated "to consumers and users but instead used language applicable to human beings generally." Id. at 88-89. The Court noted that "[i]t has been pointed out that an injury to a bystander is often a perfectly foreseeable risk of the maker's enterprise, and the considerations for imposing such risks on the maker without regard to his fault do not stop with those who undertake to use the chattel." Id. at 89 (citation modified). The Court concluded:

> If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable. Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, where as the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made, contrary to the position of defendants, to extend greater liability in favor of the bystanders.

Id.

In Ciampichini, 339 N.Y.S.2d at 717, the Supreme Court of New York, Appellate Division, Fourth Department, reconsidered its prior holding—"that no right of action exists in favor of a non-user of the product involved in the accident"—and concluded that it was "laying to rest a principle which [it] believe[d] outmoded and no longer adaptable to the rights of individuals in contemporary society." The Court noted that warranty liability had been expanding in scope and the requirement of privity had been gradually hewn away and eliminated altogether with respect to certain actions. See id. at 718, 720. The Court determined that it was "both reasonable and just to extend to bystanders the protection

- 21 -

against a defective manufacturer article" and pointed out that "[t]o restrict recovery to those who are users is unrealistic in view of the fact that bystanders have less opportunity to detect any defect than either purchasers or users." Id. at 720. The Court's decision was not premised on requirement of proof of a duty owed to a bystander but instead on "justice and common sense" as well as the extended scope of warranty liability. Id.

In Weber, 250 So.2d at 755, the Supreme Court of Louisiana discussed principles of Louisiana products liability law, holding:

> A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect.

In other words, a bystander (i.e., a third person) may recover for injuries caused by defective design of a product where the bystander proves the product was defective and that the injuries were caused by that defect. The Court did not hold that bystanders (or other plaintiffs) must demonstrate that a duty was owed to them.

In Embs, 528 S.W.2d at 704-06, the Court of Appeals of Kentucky (now known as the Supreme Court of Kentucky) held that the protections set forth in the Restatement (Second) of Torts § 402A, which it had adopted, "extend to bystanders whose injury from the defective product is reasonably foreseeable."[11] The Court noted that Comment o,

---

[11]In Embs, 528 S.W.2d at 704, a glass Seven-Up bottle sitting on the floor at the edge of a produce counter at a retail store exploded, resulting in a store patron sustaining a gash on her leg and being taken to a hospital.

which is a "caveat" to the Restatement (Second) of Torts § 402A, "expresses no opinion as to whether the rule may not apply to harm to persons other than users or consumers" and stated that "[t]he caveat articulates the essential point: Once strict liability is accepted, bystander recovery is fait accompli." Id. at 705 (citation omitted). The Court explained the reason for its holding extending protection to bystanders, stating:

> Our expressed public policy will be furthered if we minimize the risk of personal injury and property damage by charging the costs of injuries against the manufacturer who can procure liability insurance and distribute its expense among the public as a cost of doing business; and since the risk of harm from defective products exists for mere bystanders and passersby as well as for the purchaser or user, there is no substantial reason for protecting one class of persons and not the other. The same policy requires us to maximize protection for the injured third party and promote the public interest in discouraging the marketing of products having defects that are a menace to the public by imposing strict liability upon retailers and wholesalers in the distributive chain responsible for marketing the defective product which injures the bystander. The imposition of strict liability places no unreasonable burden upon sellers because they can adjust the cost of insurance protection among themselves in the course of their continuing business relationship.

Id. (citation omitted).

In West, 336 So.2d at 82, 89, the Supreme Court of Florida answered a question of law certified to it by the United States Court of Appeals for the Fifth Circuit and held that "a manufacturer may be held liable under the theory of strict liability in tort, as distinct from breach of implied warranty of merchantability, for injury to a user of the product or a bystander[.]"[12] The Court adopted the doctrine of strict liability set forth in the

---

[12]The facts of the case were that a Caterpillar grader operated by a contractor's employee ran over a woman crossing the street, resulting in the woman's death six days later. See West, 336 So. 2d at 82.

Restatement (Second) of Torts § 402A.  See id. at 87.  In addressing "the question of whether the doctrine of strict liability should be extended to a foreseeable bystander who comes within range of the danger[,]" id. at 88, the Court explained:

> The manufacturer unquestionably intends that its product will be used by the public.  There would appear to be no logic or reason in denying a right of relief to persons injured by defective merchandise solely on the ground that he was not himself a user of the merchandise.  Many products in the hands of the consumer are sophisticated and even mysterious articles, frequently a sealed unit with an alluring exterior rather than a visible assembly of component parts.  In today's world it is often only the manufacturer who can fairly be said to know and understand when an article is suitably designed and safely made for its intended purpose.

Id.  The Court noted that states that had adopted the theory of strict liability had "extended the theory to the bystander when called upon to do so." Id. at 89 (citations omitted).  The Court concluded that "[t]he public policy which protects the user and the consumer of a manufactured article should also protect the innocent bystander." Id.  In its only mention of the concept of duty, the Court stated:

> Of course, the duty of a manufacturer for breach of which liability will attach runs only to those who suffer personal injury or property damage as the result of using or being within the vicinity of the use of the dangerous instrumentality furnished by a manufacturer which fails to give notice of the danger.  Injury to a bystander is often feasible.

Id.  This mention of duty was not a discussion of the duty of care and breach thereof that is required to be shown in a negligence action.

What can be gleaned from the review of cases relied upon by the Appellate Court in Valk is that courts in California and Kentucky have required that for a bystander to recover on a strict liability design defect claim, the plaintiff must demonstrate that the alleged injury was reasonably foreseeable.  See Elmore, 451 P.2d at 89; Embs, 528 S.W.2d

- 24 -

at 706. The Supreme Court of Florida answered a question certified to it—whether strict liability coverage applied to a foreseeable bystander who comes within the range of danger—"yes" and explained that public policy should protect innocent bystanders. See West, 336 So.2d at 82, 88-89. In New York and Louisiana, courts have permitted bystanders to recover on strict liability design defect claims without imposing an additional requirement outside of the factors set forth in the Restatement (Second) Torts § 402A. See Ciampichini, 339 N.Y.S.2d at 720; Weber, 250 So.2d at 755. In none of the cases did a court conclude that a bystander was required to prove the seller owed a duty to the bystander in order to recover for a strict liability claim.

### Post-Valk Developments

Since Valk and the cases its holding is premised on, a new Restatement of Torts has been issued. The Restatement (Third) of Torts: Products Liability § 1 (1998), titled "Liability of Commercial Seller or Distributor for Harm Caused by Defective Products," provides: "One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect."[13] Significantly, the Restatement (Third) of Torts does not limit strict

---

[13]We note that the Restatement (Third) of Torts sets forth a description of when a product is defective in design that is not contained in the Restatement (Second) of Torts. The Restatement (Third) of Torts: Products Liability § 2 (1998), titled "Categories of Product Defect," provides in part:

> A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:

liability of a seller or distributor to only users or consumers, but rather indicates that sellers

and distributors are liable for harm to all "persons" for harm caused by a defective product.

After Valk, courts in other jurisdictions have continued to permit bystanders to

recover in strict liability design defect claims without requiring that a bystander prove that

a specific duty was owed by the seller to the plaintiff. Just as before the Appellate Court's

decision in Valk, after Valk, the expansion of strict liability to include coverage for

bystanders has continued with different jurisdictions taking different approaches. Either

by expansion of the common law or through the enactment of legislation, states have

allowed bystanders to pursue claims of strict liability design defect without requiring proof

of the element of duty.

In some instances, courts have adopted the principle that sellers are liable to all

persons for harm caused by a defective product and have adopted the redefined definition

of a defective product from the Restatement (Third) of Torts: Products Liability §§ 1 and

2, requiring that all plaintiffs prove that the foreseeable risk of harm could have been

---

. . .

> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe[.]

We have not been asked to determine whether the factors that we adopted in Phipps should be expanded to incorporate the new definition of when a product is defective set forth in the Restatement (Third) of Torts: Products Liability § 2. Rather, we resolve the question certified to us by the Court of Appeals. See Parler & Wobber, 359 Md. at 681, 756 A.2d at 531 ("[W]e confine our legal analysis and final determinations of Maryland law to the questions certified.") (Citations omitted)).

reduced or avoided by the adoption of a reasonable alternative design by the seller. See

Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 40, 54-55 (3d. Cir. 2009) (The United States

Court of Appeals for the Third Circuit, applying Pennsylvania law, held that, if the

Supreme Court of Pennsylvania were confronted with the issue of whether a bystander

could recover in strict liability, that Court "would adopt the Restatement (Third) of Torts,

§§ 1 and 2, and thereby afford bystanders a cause of action in strict liability[.]").

The Supreme Court of Utah has concluded that a seller is liable to a bystander for

the foreseeable consequences of the risks presented by a defective product. See Straub v.

Fisher and Paykel Health Care, 990 P.2d 384, 389-91 (Utah 1999) (The Supreme Court of

Utah stated that, in 1979, it had adopted the Restatement (Second) of Torts § 402A, and

concluded that strict liability extends to bystanders for foreseeable consequences of risks

presented by defective products.).[14] The Supreme Court of Indiana has permitted

bystander recovery on products liability claims under Indiana's Product Liability Act,

which defines the term "consumer" as including "any bystander injured by the product who

---

[14]After Embs and Valk, in Martin v. Cincinnati Gas and Elec. Co., 561 F.3d 439, 442, 446 (6th Cir. 2009), the United States Court of Appeals for the Sixth Circuit, applying Kentucky law, briefly addressed a plaintiff's claim that his father was a bystander injured by the defendants' asbestos. The Court stated that in Kentucky there is a universal duty of care. See id. at 444. Discussing Embs, 528 S.W.2d at 706, the Sixth Circuit stated that "Kentucky recognizes a bystander claim under a products liability framework" and that in Kentucky the rule "is limited to bystanders whose injury from the defect is reasonably foreseeable." Martin, 561 F.3d at 446-47 (citation modified). The Sixth Circuit concluded, however, that, as stated in its discussion of the plaintiff's negligence claim, "there [was] no evidence that the danger from secondary exposure was reasonably foreseeable at the time of [the plaintiff's father's] exposure[,]" and, as such, the trial court was correct in ruling that the plaintiff "did not present sufficient evidence to survive summary judgment on a bystander liability claim." Id. at 447.

would reasonably be expected to be in the vicinity of the product during its reasonably expected use." Stegemoller v. ACandS, Inc., 767 N.E.2d 974, 975 (Ind. 2002) (citation modified); see also Martin v. ACandS, Inc., 768 N.E.2d 426, 428 (Ind. 2002) (The Supreme Court of Indiana held that "a plaintiff who allegedly contracted a disease as a result of contact with asbestos fibers brought home on the person and clothing of her husband ha[d] standing as a bystander under" Indiana's Product Liability Act to bring the claim, stating that "taking into account the nature of asbestos products, [the plaintiff] had a cognizable claim as a bystander under the Act." (Citation modified)); Camplin v. ACandS, Inc., 768 N.E.2d 428, 429 (Ind. 2002) (same).

### Gourdine and Georgia Pacific Do Not Require Proof of Duty in a Strict Liability Design Defect Claim

Our holdings in cases addressing whether a defendant owed a duty to plaintiffs who brought strict liability failure to warn claims do not mandate that a person in Mrs. Allen's position must prove the element of duty in a strict liability design defect claim. In Gourdine, 405 Md. at 726-27, 955 A.2d at 772-73, the petitioner brought claims of negligence and strict liability for failure to warn against a drug manufacturer and others, both of which require proof of the element of duty. The petitioner's husband had been killed in a vehicle collision caused by a driver who was experiencing a "debilitating episode" due to an adverse reaction to insulin medications. Id. at 726, 728, 955 A.2d at 772-73.

The petitioner argued that the drug manufacturer owed a duty to her husband to warn the other driver about the risks of driving after taking a combination of medications.

See id. at 737-38, 955 A.2d at 779. Due to the nature of the claims, we were not required to determine whether establishing a duty of care is necessary in failure to warn claims, it is, see id. at 743, 955 A.2d at 782 ("Duty[] is an essential element of both negligence and strict liability causes of action for failure to warn."); rather, we were required to determine whether that particular element of the failure to warn claims had been satisfied, see id. at 750, 758, 955 A.2d at 786, 791.

Applying general common law tort theories, we concluded that the drug manufacturer did not owe the petitioner's husband a duty of care because there had been no contact between the deceased and the drug manufacturer whatsoever and there was no connection between the drug company's warnings or failure to warn of the potential of an adverse reaction to the drugs and the petitioner's husband's death. See id. at 750, 955 A.2d at 786. Although we stated that negligence and strict liability concepts had morphed together in failure to warn cases and that duty is an element of both negligent and strict liability failure to warn claims, see id. at 743, 955 A.2d at 782, in referencing strict liability causes of action, we were clearly referring only to strict liability failure to warn actions and not strict liability design defect claims. There was no strict liability design defect claim in Gourdine.

Likewise, this Court's holding in Georgia Pacific, LLC v. Farrar, 432 Md. 523, 69 A.3d 1028 (2013), cannot be interpreted to require that a person in Mrs. Allen's position prove the element of duty in a strict liability design defect case. In Georgia Pacific, id. at 526-27, 540-41, 69 A.3d at 1030-31, 1039—another strict liability failure to warn case in which proof of duty was required—we held that a manufacturer did not have a duty to

protect a plaintiff from injury due to exposure to asbestos fibers in its product because the plaintiff's alleged injury was not foreseeable and, that even if the alleged injury had been foreseeable, there was no available way, at the time, for the manufacturer to provide a warning that could have prevented the potential of injury. The plaintiff alleged injury due to exposure to asbestos dust brought home on the work clothing of her grandfather, who was a mechanic in the construction industry from 1925 to 1970. See id. at 525, 69 A.3d at 1030. We confirmed that in a negligence count in a product liability action, any plaintiff must allege and prove the same elements as in any action sounding in negligence—namely, "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." Id. at 528, 69 A.3d at 1031-32 (citation modified). We applied the existing requirement that in a strict liability failure to warn claim, a plaintiff must prove that a manufacturer or supplier owed a duty of care, and we concluded that the plaintiff in the case had failed to do so. See id. at 526, 541, 69 A.3d at 1030-31, 1039. As with Gourdine, there was no strict liability design defect in Georgia Pacific.

**This Case**

General Electric contends that the Appellate Court's extension of the ability to recover to bystanders was based on principles of negligence, *e.g.*, foreseeability of injury, and, as such, requires proof of a duty of care. General Electric asserts that, "in expanding strict liability beyond product users and consumers to cover bystanders to the use of the product, the *Valk* court approached the issue as addressing 'the all-important concept of

legal duty.'" (Citations omitted). General Electric maintains that a "seller's duty in a strict liability design defect claim, like its duty under any other strict liability theory, runs to users and consumers of the product and to bystanders present when and where the product is used." As evidence that proof of duty is required, General Electric argues that in <u>Valk</u>, the Appellate Court "cited approvingly to commentators observing that the effect of expanding of strict liability to cover bystanders to the use of the product 'is obviously to put the strict liability on the same footing as negligence, as to all foreseeable injuries.'" (Citation omitted).

We conclude that, with respect to an asbestos product strict liability design defect claim, a person in the position of Mrs. Allen is not required to prove the element of duty in addition to the four elements of an action in strict liability set forth in <u>Phipps</u>, 278 Md. at 344, 363 A.2d at 958. This conclusion is derived directly from our holding in <u>Phipps</u>, <u>id.</u> at 352, 363 A.2d at 963, that demonstrating the existence of a defect in a product at the time it leaves the seller's control indicates fault on the seller's part that justifies imposing liability for injuries caused by the product, and the Appellate Court's holding in <u>Valk</u>, 74 Md. App. at 323, 537 A.2d at 632, that persons who are not users or consumers of products are protected under the doctrine of strict liability. Based on our analysis in <u>Phipps</u> and approval of the Appellate Court's holding in <u>Valk</u>, in our view, extending the requirement of proof of duty, which is a necessary element of proof for all claimants in negligence and strict liability failure to warn claims, to be a requisite element of proof for a person in Mrs. Allen's position in a strict liability design defect claim is not warranted.

General Electric's contentions misapprehend the Appellate Court's thorough analysis and approach in Valk and our basis for adopting the elements of a strict liability design defect claim in Phipps. In Valk, 74 Md. App. at 311, 318-19, 537 A.2d at 625-26, 629, after examining the adoption of the theory of strict liability by courts in other jurisdictions and the trend toward expanded coverage in products liability cases, the Appellate Court concluded that "[t]he rule that has finally emerged is that the seller is liable for negligence in the manufacture or sale of any product which may reasonably be expected to be capable of inflicting substantial harm if it is defective." (Citation omitted). This was not a determination that strict liability in a design defect claim is based on establishing a negligence-based tort duty or a determination that such liability is based on the foreseeability of injury to a specific person or group.

In Valk, id. at 318, 537 A.2d at 629, in describing the development of the theory of strict liability and the expansion of coverage in the products liability field to bystanders, the Appellate Court explained:

> Within each of its doctrinal subdivisions—1) the original contractual obligation based upon express and implied warranties, 2) the subsequently developed liability in tort for negligence, and 3) the final development of strict liability in tort—there has been internal movement as well, although the chronology for that internal movement has been slower in the more recently developed doctrinal area. Originally, there was coverage only for the immediate purchasers who were in privity with the manufacturers/sellers. That coverage was soon expanded to include even more remote consumers and ultimately users. The last and most recent expansion has embraced third-party beneficiaries or bystanders as well.

To the extent that the Appellate Court purported to address "the all-important concept of legal duty[,]" it did so in response to the manufacturer's claim that the plaintiffs'

"right to recovery founders upon the all-important concept of legal duty." Id. at 317, 537 A.2d at 629. It was the manufacturer, not the Appellate Court, that asserted that the concept of legal duty is "all-important" for purposes of a plaintiff's recovery on a strict liability claim. The Appellate Court reached the exact opposite conclusion, indicating that the expansion of coverage in strict liability in design defect claims freed plaintiffs, including bystanders, from the need to prove negligence-based elements. See id. at 323, 537 A.2d at 631-32.

A closer look at General Electric's position reveals that its contention that Mrs. Allen is not a person within the scope of coverage of a strict liability design defect claim is based on its view that Mrs. Allen had no contact with the product at issue and that Mrs. Allen was not present at a place or time where the product was being used. According to General Electric, in Valk, after reviewing cases from other jurisdictions, the Appellate Court held that strict lability in a design defect case extended to "bystanders to the *use* of the product such as the decedent in that case." (Emphasis added). General Electric interprets the language of Comment o of § 402A of the Restatement (Second) of Torts— stating that there is no reason why "[c]asual bystanders, and others who may come in contact with the product, as in the case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile," should not be brought under the scope of strict liability protection—to mean that there is no basis for extending the scope of liability to plaintiffs "who were distant in time and place from the use of the product and had no contact with the product itself." (Footnote omitted).

General Electric's interpretation of the Appellate Court's holding in <u>Valk</u> and in particular the definition of the word "bystander" that it attributes to the Court goes far beyond the Appellate Court's holding. <u>See</u> 74 Md. App. at 323, 537 A.2d at 631-32. Although <u>Valk</u> involved injury to a person who was actually struck by the product at issue, the Appellate Court did not purport to limit the definition of the word "bystander" to a person who was injured at a time or location where the product was being used. <u>See id.</u> at 308, 323, 537 A.2d at 624, 631-32. In fact, the Appellate Court did not set forth a definition of the word bystander.

Similarly, General Electric's interpretation of the language of Comment o of § 402A of the Restatement (Second) of Torts reads into the comment language that is not there. Comment o, labeled "Injuries to non-users and non-consumers," provides that the Institute has neither expressed approval nor disapproval of expansion of § 402A of the Restatement (Second) of Torts to permit recovery by "[c]asual bystanders[] and others who may come into contact with the product[.]" Comment o lists persons such as "employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile" as examples of people who have been denied recovery. Although Comment o refers to expanding the rule to casual bystanders and others who come in contact with a product, there is no language in the comment that denotes a casual bystander to be a person who is present at the time and place that a product is used.

Multiple sources confirm that "[i]f products containing asbestos are disturbed, tiny asbestos fibers are released into the air. When asbestos fibers are breathed in, they may get trapped in the lungs and remain there for a long time. Over time, these fibers can

accumulate . . . and lead to serious health problems." National Cancer Institute Publication, "Asbestos Exposure and Cancer Risk" (revised May 20, 2021), https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/asbestos/asbestos-fact-sheet#r6 [https://perma.cc/SUZ9-W65X]; see also Agency for Toxic Substances and Disease Registry, "Health Effects of Asbestos" (Aug. 12, 2024), https://www.atsdr.cdc.gov/asbestos/health-effects [https://perma.cc/7ULS-GUHH]. "Asbestos fibers lie dormant in the human body over a period of time." Duffy v. CBS Corp., 458 Md. 206, 230, 182 A.3d 166, 180 (2018) (citation modified). A person who is exposed to asbestos may become "aware of the injury only after he or she starts to experience symptoms of a latent disease, which usually occur many years after exposure." Id. at 231, 182 A.3d at 180 (citation omitted). We have determined with respect to the development of asbestos-related diseases that "bodily injury occurs when asbestos is inhaled and retained in the lungs." Id. at 231, 182 A.3d at 180 (citation modified). Imposing the requirement that, for recovery in an asbestos product strict liability claim for design defect, a person in Mrs. Allen's position must be present at the time and place that the product at issue is used disregards the manner in which injury may occur from exposure to asbestos.

On the other hand, as to the requirement of contact with the product, the factors adopted by this Court in Phipps, 278 Md. at 344, 352-53, 363 A.2d at 958, 963, based on § 402A of the Restatement (Second) of Torts, unequivocally require that to prevail on a claim of strict liability based on a design defect, a plaintiff must have had contact with the product at issue and that the contact must have been reasonably foreseeable. Whether a plaintiff is a user or consumer or a person in Mrs. Allen's position, to prevail on a strict

- 35 -

liability design defect claim, under the second and fourth elements set forth in Phipps, id. at 344, 352, 363 A.2d at 958-59, 963, a plaintiff is required to prove, among other things, that the product at issue was unreasonably dangerous to the person and that the product was expected to and did reach the person, *i.e.*, that the person had contact with the product.

Insofar as the concept of foreseeability of injury is concerned, the Appellate Court's mention or discussion of foreseeability of injury in Valk, 74 Md. App. at 323, 537 A.2d at 632, consisted of observing that Keeton, Prosser and Keeton on Torts, at 704 (5th ed. 1984) summed up the "movement" expanding strict liability protection to bystanders by stating that "other jurisdictions have agreed with [the] decision . . . until it is now generally followed" and that "[i]ts effect is obviously to put the strict liability on the same footing as negligence, as to all foreseeable injuries." This observation does not translate into a requirement that bystanders prove the extra element of duty to prevail in a strict liability design defect claim. While foreseeability of harm "is often considered among the most important" factors in determining whether a duty exists, "its existence alone does not suffice to establish a duty under Maryland law." Patton v. U.S. of Am. Rugby Football, 381 Md. 627, 637, 851 A.2d 566, 571 (2004) (quoting Remsburg v. Montgomery, 376 Md. 568, 583, 831 A.2d 18, 26 (2003)); see also Valentine v. On Target, Inc., 353 Md. 544, 551, 727 A.2d 947, 950 (1999). To determine whether a plaintiff has alleged sufficient facts to establish the existence of a duty, we use a non-exhaustive list of factors, which include

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between defendant's conduct and the injury suffered, the moral blame attached to the

defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for the breach, and the availability, cost and prevalence of insurance for the risk involved.

Patton, 381 Md. at 637, 851 A.2d at 571 (citation omitted).

Our holding stems from the concept that it is reasonably foreseeable that a person in Mrs. Allen's position may come into contact with the product and that, therefore, the seller may be subject to liability for physical harm caused thereby, if the elements of a strict liability design defect claim are satisfied. The fourth element of a strict liability design defect claim incorporates not only a requirement that a person have contact with the product at issue but also the requirement that the person's contact with the allegedly defective product be foreseeable. In Phipps, 278 Md. at 348-49, 363 A.2d at 961, in contending that this Court should reject the adoption of the strict liability design defect claim elements as set forth in § 402A of the Restatement (Second) of Torts, General Motors argued, among other things, "that the adoption of strict liability would substantially alter the rights of consumers and sellers as presently defined by the law of negligence and contract[.]" We rejected this argument, explaining that

> the major distinction between an action in strict liability in tort and one founded on traditional negligence theory relates to the proof which must be presented by the plaintiff. Although the plaintiff need not prove any specific act of negligence on the part of the seller, as in other product liability cases, proof of a defect existing in the product at the time it leaves the seller's control must still be presented. As one commentator has observed, the doctrine of strict liability is really but another form of negligence per se, in that it is a judicial determination that placing a defective product on the market which is unreasonably dangerous to a user or consumer is itself a negligent act sufficient to impose liability on the seller[.]

Id. at 350-51, 363 A.2d at 962 (citation omitted). In adopting the elements of a strict liability design defect claim in Phipps, we did not require proof of a duty to a consumer or user. And, in Valk, 74 Md. App. at 318, 320, 537 A.2d at 629-30, after setting forth the definitions of terms "consumer" and "user," the Appellate Court explained that Comment o to § 402A of the Restatement (Second) of Torts forecast that the scope of liability might be extended to bystanders "who may come into contact with the product[.]"

Our holding in Phipps and the Appellate Court's holding in Valk applied traditional principles of foreseeability to strict liability design defect claims, where a manufacturer introduces an unreasonably dangerous product into the stream of commerce. In the case of a "consumer" or "user," where it is reasonably foreseeable that they will come into contact with the product, a seller is subject to liability for harm caused to them if the consumer or user satisfies the elements of a strict liability design defect claim as adopted by this Court in Phipps. It is unnecessary to establish duty as a separate element of a strict liability design defect claim because the claim itself is predicated on the understanding that a manufacturer of an unreasonably dangerous product should be responsible for harm caused to those it is reasonably foreseeable will come into contact with its product.

To recover under a strict liability design defect claim, a plaintiff must demonstrate that a product was expected to and did reach the person without substantial change in its condition. See Phipps, 278 Md. at 344, 363 A.2d at 958. This requires that the plaintiff prove: (1) that contact with the product was expected, i.e., foreseeable; (2) that contact with the product occurred; and (3) that the product reached the person without substantial change in its condition. To be sure, foreseeability of contact with a product and

foreseeability of injury from a product are not the same concepts. Although some jurisdictions have required that bystanders prove foreseeability of injury to recover in a strict liability design defect claim, and, after the Appellate Court's decision in Valk, some jurisdictions have incorporated the definition of a defectively designed product from the Restatement (Third) of Torts, which requires proof of a foreseeable risk of harm that could have been reduced or avoided, neither our case law nor any statute enacted by the General Assembly has imposed such requirements.

After a thorough review of our holding in Phipps and the Appellate Court's holding in Valk, we see no basis on which to extend case law requiring proof of duty as an element in failure to warn claims to require that a person in Mrs. Allen's position satisfy the element of duty in proving a strict liability design defect claim. In Phipps, 278 Md. at 352-53, 363 A.2d at 963, in adopting the theory of strict liability, we explained:

> [T]here is no reason why a party injured by a defective and unreasonably dangerous product, which when placed on the market is impliedly represented as safe, should bear the loss of that injury when the seller of that product is in a better position to take precautions and protect against the defect. Yet this may be the result where injured parties are forced to comply with the proof requirements of negligence actions or are confronted with the procedural requirements and limitations of warranty actions. Therefore, we adopt the theory of strict liability as expressed in [§] 402A of the Restatement (Second) of Torts.

This rationale applies with equal force in determining whether a person in Mrs. Allen's position should be required to prove the additional element of duty.

The theory undergirding a strict liability design defect claim is that a seller is liable for placing an unreasonably dangerous defective product in the stream of commerce. See Phipps, id. at 344, 363 A.2d at 958-59; Restatement (Second) of Torts § 402A. "Where

- 39 -

the seller supplies a defective and unreasonably dangerous product, the seller or someone employed by him has been at fault in designing or constructing the product." Phipps, 278 Md. at 352, 363 A.2d at 963. In an asbestos strict liability design defect claim, a person in Mrs. Allen's position must demonstrate that (1) the product was defective at the time it left the control of the seller, (2) it was unreasonably dangerous to the person, (3) the defect was a cause of the injuries, and (4) the product was expected to and did reach the person without substantial change in its condition. See id. at 344, 363 A.2d at 958. Put another way, Mrs. Allen must prove all four elements of a design defect strict liability claim set forth in Phipps. See also Valk, 74 Md. App. at 312-13, 323, 537 A.2d at 626, 632.

**Conclusion**

We hold that in an asbestos-related strict liability design defect claim, where a person who lived in the household of a user or consumer alleges injury based on exposure to dust from the asbestos product at issue through no fault on the person's part, the person is not required to prove the additional element of duty to establish the claim. Our holding neither adds additional elements nor resolves the merits of any issue with respect to the elements of a strict liability design defect claim as set forth in Phipps. The requirement that a person in Mrs. Allen's position be exposed to dust of the asbestos product at issue through no fault on the person's part goes to making clear that sellers are not subject to liability for injuries caused by a claimant's misconduct.

It is not necessary that we set forth a definition of the word "bystander" or declare whether Mrs. Allen was one. It is enough for us to conclude that, in a case involving alleged exposure to asbestos, to establish a claim of strict liability based on a design defect,

- 40 -

a person in Mrs. Allen's position, who is neither a user nor consumer, is not required to prove the additional element of duty to establish the claim. We do not answer the question of whether, in other contexts, with respect to a strict liability design defect claim, a person who is not a user or consumer of a product must prove elements in addition to those set forth in Phipps.

For all of the reasons above, we answer the certified question "no." As such, we do not address what factors are used to determine whether a duty is owed.

**CERTIFIED QUESTION OF LAW ANSWERED. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**